HUGH TIGHE, Respondent, v. JAMES MORRISON, Appellant.

Defendant and one D., having been appointed administrators on condition that they file the usual bond with two sureties, agreed between themselves that each should furnish a surety. Defendant applied to plaintiff to sign the bond, stating that he had an interest in the estate as it was indebted to him, and upon his oral guaranty to save plaintiff from all loss plaintiff consented and executed the bond as surety for both administrators. Plaintiff having been compelled to pay $1,200 for a default of D., as administrator, brought this action upon the guaranty. Defendant claimed that, so far as it related to D., it was a special promise to answer for the debt, default or miscarriage of another, and so was void under the statute of frauds. (2 R. S. 136, § 2.) *Held,* untenable; that the promise was an original one, not severable in its nature, and legally beneficial to the defendant only.

To bring a promise within the statute it must be made to the person entitled to enforce the liability assumed by the promisor.

*Green* v. *Cresswell* (10 A. & E. 453) stated as overruled; *Kingsley* v. *Balcome* (4 Barb. 131) distinguished and limited.

Defendant offered to prove that with plaintiff's knowledge and approval D. took $100 belonging to the estate and converted it to his own use, placing with the assets as a substitute his own note, indorsed by plaintiff, which note was not paid. This was excluded on plaintiff's objection. *Held,* error; that for a *devastavit* committed with his connivance plaintiff could not charge defendant.

Reported below, 41 Hun, 1.

(Argued June 26, 1889; decided October 8, 1889.)

APPEAL from a judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made at the June Term 1881, which affirmed a judgment in favor of plaintiff, entered upon a verdict, and affirmed an order denying a motion for a new trial.

This action was brought upon an alleged guaranty or promise of indemnity.

Prior to June 21, 1875, Ann McKittrick, Michael Dowdall and the defendant were appointed administratrix and administrators, respectively, of the estate of one Hugh McKittrick, deceased, upon the condition that they furnish the usual bond, signed by two sureties, in the penalty of $3,000. After such appointment, but before the bond was

given, it was agreed between Dowdall and the defendant that each should furnish one of such sureties. Subsequently, the defendant asked the plaintiff to sign the bond, saying that he had been chosen administrator for Hugh McKittrick and that he wanted a man to sign his paper; that he had an interest in the estate himself for cattle, oats and butter for which the estate owed him, and that the plaintiff would do him a great favor if he signed his paper. After some remarks about immaterial matters, the defendant continued: " I will guarantee before your boys that you never shall lose one cent if you sign my paper, and you will do me a great favor as I will get my money out of the estate." Shortly afterward the conversation was partially repeated in the presence of plaintiff's wife, who said that she did not know what administrator meant, whereupon the defendant said, in the presence of the plaintiff, that Mr. McKittrick had debts through the country and that he wanted to collect them; that he was worth double the amount himself, but to fulfill the law he wanted a man to sign his paper, and that he would guarantee that the plaintiff should never lose one cent by so doing; that he would see him all safe and right without ever losing one cent.

As soon as the plaintiff consented to sign, the defendant carried him to the neighboring village, and, meeting Dowdall, said: "I have got my man," to which Dowdall replied: "I have got mine," meaning one McLaughlin, the other surety. Soon after the defendant handed a paper to the plaintiff and told him where to sign, and thereupon he signed and acknowledged the same in the form following:

" Know all men by these presents, that we, Ann McKittrick, James Morrison, Michael Dowdall, William McLaughlin, Hugh Tighe, of the town of Avon and county of Livingston and state of New York, are held and firmly bound unto the People of the state of New York, in the sum of three thousand dollars, to be paid to the said People; which payment, well and truly to be made, we bind ourselves, and each of our heirs, executors and administrators, firmly by these presents.

" Sealed with our seal.

"Dated the twenty-first day of June, in the year of our Lord, one thousand eight hundred and seventy-five.

"The condition of this obligation is such, that if the above bounden Ann McKittrick, James Morrison and Michael Dowdall, administrators of all and singular the goods, chattels and credits of Hugh McKittrick, deceased, shall faithfully execute the trust reposed in them as such; and, also, if the said administrators shall obey all the orders of the Surrogate's Court of the county of Livingston, touching the administration of the estate committed to them, then the above obligation to be void, otherwise to remain in full force and virtue.

| | |
|---|---|
| "ANN McKITTRICK. | [L. S.] |
| "MICHAEL DOWDALL. | [L. S.] |
| "JAMES MORRISON. | [L. S.] |
| "WILLIAM McLAUGHLIN. | [L. S.] |
| "HUGH TIGHE. | [L. S.] " |

Before the commencement of this action the plaintiff was compelled to pay the sum of $1,200 upon said bond owing to the default of Dowdall as such administrator. The entire loss fell upon the plaintiff, as the other surety became insolvent. This action was brought to recover from the defendant the amount so paid.

*S. Hubbard* for appellant. Defendant was not a surety for Dowdall, the defaulting administrator. He was not co-surety with the plaintiff for the default of either administrator. (*Kirby* v. *Turner*, Hopk. 309, 330–334; *Kirby* v. *Taylor*, 6 Johns. Ch. 253; 84 N. Y. 346; 5 Redf. 306.) As an agreement to indemnify the plaintiff against the default or miscarriage of Dowdall, who committed the *devastavit*, the agreement was void, not being in writing. (2 R. S. chap. 7, tit. 2, § 2; id. [8th ed.] 2590; *Kingsley* v. *Balcom*, 4 Barb. 131; *Baker* v. *Dillman*, 21 How. 444, 445; *Green* v. *Cresswell*, 10 Ad. & El. 453; *Carville* v. *Crane*, 5 Hill, 483, 485, 486; *First Nat. Bank* v. *Bennett*, 33 Mich. 520; *Nugent* v. *Wolf*, 111 Pa. 471; 2 Cent. Rep. 287; *Macy* v. *Childress*,

2 Tenn. Ch. 438 ; *Barry* v. *Ransom*, 12 N. Y. 462, 467; 38 Alb. L. Jour. 63; *Mallory* v. *Gillett*, 21 N. Y. 433; *Sanders* v. *Gillispie*, 59 id. 250, 252; *Berry* v. *Brown*, 107 id. 659 ; *Brown* v. *Wibber*, 38 id. 190, 191 ; *White* v. *Rintoul*, 108 id. 222 ; *Belknap* v. *Bender*, 75 id. 446, 449, 451 ; *Ackly* v. *Parmenter*, 31 Hun, 477; 98 N. Y. 425 ; *Thomas* v. *Cook*, 8 B. & C. 728 ; De Colyer on Guaranties, 58, 59 ; *Wolverton* v. *Davis*, 6 S. E. Rep. 619 ; *Myers* v. *Moses*, 15 Johns. 425.) The court erred in not granting the nonsuit, when plaintiff rested. The complaint being on a guaranty against *liability* and the proof was simply a guaranty against *loss*. (*R. T. Church* v. *Higgins*, 48 N. Y. 537; *Nat. Bank of Newburg* v. *Bigler*, 33 id. 52, 61, 62.) The agreement was simply to indemnify against loss. The plaintiff must show that he was compelled to pay before the cause of action accrues. (*Aberdeen* v. *Blackman*, 6 Hill, 324; *Gilbert* v. *Wisman*, 1 N. Y. 550 ; *R. T. Church* v. *Higgins*, 48 id. 537 ; *Bazen* v. *Roget*, 3 Johns. Cas. 87 ; *Nat. Bank of Newburg* v. *Bigler*, 83 N. Y. 52, 61, 62 ; Sedgwick on Dam. 303–314 ; *Crippen* v. *Thompson*, 6 Barb. 532 ; *Nanz* v. *Oakley*, 22 Week. Dig. 312.) The court erred in refusing nonsuit on the ground that by the agreement proved to indemnify plaintiff for signing *defendant's* bond, defendant did not become liable for Dowdall's default. (*Kirby* v. *Turner*, Hopk. 309, 330–334; *Kirby* v. *Taylor*, 6 Johns. Ch. 253; *Gold* v. *Phillips*, 10 Johns. 412; *Boyle* v. *Boyle* 106 N. Y. 654.) The court erred in rejecting the evidence that Dowdall misappropriated $100 on Tighe's note, and in rejecting proof of the matters set out in amended answer. He should be held accountable for *devastavit* permitted on the same principle as joint executors are held. (*Croft* v. *Williams*, 88 N. Y. 384, 388.)

*E. A. Nash* for respondent. The agreement, to become the surety of Dowdall, was made upon a consideration moving between Morrison, the promisor, and Tighe, the promisee; and, therefore, is within the rule that where the promise to pay the debt of a third person arises out of some new or dis-

tinct consideration of benefit to the promisor, or harm to the promisee, such promise is not within the statute of frauds, and need not be in writing. (*Leonard* v. *Vredenburgh*, 8 Johns. 29, 39; *Furley* v. *Cleveland*, 4 Cow. 432; *Meech* v. *Smith*, 7 Wend. 315; *Mallory* v. *Gillett*, 21 N. Y. 412; *Prime* v. *Koehler*, 77 id. 91; *Smart* v. *Smart*, 97 id. 559; *Ackley* v. *Parmenter*, 98 id. 425.)

Vann, J. That the plaintiff signed the bond to which the conversation between the parties related cannot be denied by the defendant, as only one paper was spoken of, and at the close of the conversation he handed the undertaking in question to the plaintiff and told him where to sign it. Although, during his efforts to persuade the plaintiff to sign, the defendant spoke of "his paper" only as if he were to be sole administrator, the instrument, in fact, signed by the plaintiff, and which he had the right to presume was the one to which the guaranty related, provided for a faithful discharge of the trust by Dowdall also. The agreement of the defendant, therefore, as the jury is presumed to have found, was to indemnify the plaintiff against loss and to " see him safe " or hold him harmless if he signed the bond now under consideration. As the direct result of signing said bond, the plaintiff has been compelled to pay the amount involved in this action.

The defendant, when called upon to perform his agreement to indemnify, insists that it is a special promise to answer for the debt, default or miscarriage of another person, and that it is void by the statute of frauds because not in writing and subscribed by him as the person to be charged.

In order to attain a position which he represented would be of pecuniary value to himself, the defendant promised to indemnify the plaintiff against the consequences of an act necessary to enable him to enjoy said position. One of those consequences was his own possible default, and another was the possible default of Dowdall. Within all of the authorities the promise was clearly original as to the former, but it is contended that it was collateral as to the latter. This con-

tention involves the assumption that a promise by the defendant to answer for the future default of himself and another is partly within and partly without the statute. Is this possible when there was but a single promise, the sole object of which was to enable the promisor to accomplish a purpose of his own? Is not the promise to be interpreted with reference to its object and the defendant to be regarded as contracting for himself only, even if the effect includes another? The promise was in form upon his own account. He asked the plaintiff to sign "his paper," and agreed to indemnify him if he did so. Shortly afterward, handing him a paper, he told him where to sign it. If the plaintiff then knew the extent of the liability he was incurring, the promise of the defendant was impliedly modified by that and other circumstances, so as to include the paper actually signed; but was it in spirit any the less the defendant's paper, so far as the point under consideration is concerned. Moreover, so far as appears, the consideration for the promise moved to the defendant only. In effect he said to the plaintiff: "In consideration of that which is an advantage to me, I promise to protect you from loss if you sign my paper, and here it is and there is the place for your signature."

He did not promise to pay the plaintiff if Dowdall did not pay him, but, in substance, to pay him if in consequence of Dowdall's failure to observe the condition of the bond, plaintiff should have to respond to the People. This seems to us an original promise. It was legally beneficial to the defendant only, because Dowdall did not request the plaintiff to sign, and hence was under no legal obligation to the plaintiff when he did sign. There was no liability from Dowdall to the plaintiff until years later, when by the default of the former the latter was compelled to pay. (*Leonard* v. *Vredenburgh*, 8 Johns. 29, 39; *Mallory* v. *Gillett*, 21 N. Y. 412; *Prime* v. *Koehler*, 77 id. 91; *Smart* v. *Smart*, 97 id. 559; *White* v. *Rintoul*, 108 id. 222.) The able argument of the learned counsel for the defendant seems based upon the theory that the promise in question is severable in its nature,

and that while it is good as to any default of defendant, it is bad as to the default of Dowdall.

Upon this assumption the interesting and somewhat doubtful question is involved, whether a promise to indemnify the promisee against a liability to be incurred by him at the request of the promisor only, and for his benefit, as surety for the fulfillment of a third person's engagement to a fourth, is within the statute. The decisions upon this question are at variance. A review of the authorities applicable is no longer practicable owing to their number. Many of them have been carefully collated and analyzed by a recent writer, who, after a thorough consideration of the subject, concludes that the weight of authority is in favor of the doctrine that such an agreement is not affected by the statute. (Throop's Validity of Verbal Agreements, §§ 438–474.) Our examination of the authorities has led us to the same conclusion, and careful study of the statute has convinced us that this result is sustained by the weight of argument also.

By the section in question every special promise to answer for the debt, default or miscarriage of another person is required to be in writing. (4 R. S. [8th ed.] 2590, § 2.) An analysis of the statute shows that it contemplates two concurrent liabilities, first, that of the person who makes the "special promise," and, secondly, that of "another person," or the one for whose "debt, default or miscarriage" the special promise is made. The one arises only out of the special promise itself, while the other may spring from any business transaction.

Were there two concurrent liabilities in the case under consideration? There was the liability of the defendant, the "special" promisor, to the plaintiff, the promisee, but there was no liability on the part of Dowdall, the third person, to the promisee, at the time the promise was made or when the bond was executed. Dowdall, as already suggested, was under no legal obligation to the plaintiff until by his default he had compelled him to pay the bond, and then his liability arose not out of any promise on his part, but sprang by operation of law from the fact of payment only.

It is probable, yet not certain, that Dowdall assented that the plaintiff should become his surety, but, as was said in *Holmes* v. *Knights* (10 N. H. 175, 178), "mere assent, without any request or promise, and when there was a request by" the defendant, "and an express promise by him to indemnify, is not sufficient to raise an implied promise." It distinctly appears that the defendant did, and that Dowdall did not, request the plaintiff to become surety. It is of no importance that the act of the plaintiff resulted in a benefit to Dowdall, provided the promise was not collateral to any liability of the latter to the former. The obligation arising from payment was, of course, subsequent to the engagement of the defendant, but the person undertaken for must be or become liable at the time the promise is made. Where the promise does not relate to a precedent liability of the third person, the question whether it is original or collateral depends upon whether the third person incurred any liability concurrently with the promisor. (Roberts on Frauds, 224; De Colyar on Guar. 66.) While the bond was given to the People, who stand for "the creditor," as that word is used in the authorities, the promise in question was not made to them. Such a promise would have been collateral to the main obligation. But this promise was not made to the creditor, and at the time it was made there was no liability of the third person in existence to which it could be collateral. It was not a promise to answer for the debt, default or miscarriage of another, for which that other was, at the time, liable to the promisee, although he was liable to the creditor, which is unimportant. It was an original promise that certain things should be done by the third person. As there was no original liability on the part of Dowdall to which the defendant's promise could be collateral, the case falls within the first class named by Judge COMSTOCK in his noted classification in *Mallory* v. *Gillett* (*supra*).

Moreover, the rule seems to be well settled that a promise not made to the person entitled to enforce the liability assumed by the promisor is not within the statute. The special, which

means simply the express, promise was not made to the People, who, as the obligees named in the bond, were entitled to enforce it, but to the plaintiff, who had no such right. It was not a promise to answer for the default of one who owed any duty to the plaintiff, for Dowdall had neither expressly nor impliedly entered into any engagement with him. The duty owed by Dowdall was to the People only, standing as the creditor or fourth person. The following authorities are cited in support of this position : *Harrison* v. *Sawtel* (10 Johns. 242) ; *Chapin* v. *Merrill* (4 Wend. 657) ; *Barry* v. *Ransom* (12 N. Y. 462) ; *Mallory* v. *Gillett* (21 id. 412) ; *Sanders* v. *Gillespie* (59 id. 250, 252) ; *McCraith* v. *National Mohawk Valley Bank* (104 id. 414) ; *Thomas* v. *Cook* (8 Barn. & Cres. 728) ; *Reader* v. *Kingham* (13 C. B. [N. S.] 344) ; *Cripps* v. *Hartnoll* (4 B. & S. 414 ; 10 Jur. [N. S.] 200) ; *Aldrich* v. *Ames* (9 Gray, 76) ; *Smith* v. *Sayward* (5 Me. 504) ; *Jones* v. *Shorter* (1 Ga. 294) ; *Birkmyr* v. *Darnell* (1 Smith's L. C. 522, and cases cited in note on page 550.)

There are cases holding the opposite doctrine, the most noted of which are *Green* v. *Cresswell* (10 Ad. & Ellis, 453) and *Kingsley* v. *Balcome* (4 Barb. 131). The former, which is responsible for much of the confusion existing upon the subject, can no longer be regarded as the law in the country where it was decided, as will appear from the later English cases. (*Fitzgerald* v. *Dressler*, 6 Com. B. [N. S.] 374 ; *Reader* v. *Kingham, supra* ; *Batson* v. *King*, 4 H. & N. 739 ; *Cripps* v. *Hartnoll, supra ; Wildes* v. *Dudlow*, L. R., 19 Eq. Cas. 198.)

In *Kingsley* v. *Balcome* the promise was without any consideration, and no authority is cited except *Green* v. *Cresswell.* The able opinion is mainly a criticism of several cases holding a doctrine the opposite of that announced by the court.

One exception relating to evidence requires attention. The defendant offered to prove that on November 1, 1875, said Dowdall took the sum of $100 belonging to the estate, and, with the knowledge and approval of the plaintiff, converted the same to his own use ; that as a part of the transaction a note for said sum, indorsed by plaintiff, was given by Dow-

dall to the administrators and placed with the assets of the
estate as a substitute for said money, and that said note was
never paid. The plaintiff interposed a general objection,
which was sustained by the court and an exception was taken
by the defendant.

The learned General Term held that as the amount of
Dowdall's default was $1,582.35, while the suit brought
against the plaintiff for that sum was compromised by the
payment of $1,200, it was to be assumed that the money so
converted " was included in the settlement before the surro-
gate, and embraced in the final compromise made by the
plaintiff."

According to the decree of the surrogate, read in evidence,
Dowdall was charged with all sums received by him, but was
not credited with said note nor was the note included in the
list of matters uncollected. It is, therefore, to be presumed
that the $100 in question was included in the amount which
the Surrogate's Court required Dowdall to pay over, and
which was the basis of the action against the plaintiff. But
it does not appear for what reason, or upon what basis the
compromise of that action was effected. It is not probable
that the amount of a *devastavit* sanctioned by the plaintiff
would have been deducted. For aught that appears he has
recovered that sum from the defendant, and to that extent
has taken advantage of an act done by his own connivance.

We think that it was error to exclude the evidence offered,
and that for this reason the judgment should be reversed and
a new trial granted, with costs to abide event, unless the
plaintiff stipulates within thirty days to deduct from the
amount of his recovery the sum of $100, with interest thereon
from the 1st of November, 1875, in which event the judg-
ment, as so modified, should be affirmed, but without costs to
either party.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.

Judgment accordingly.