JOHN M. BARNETT, RESPONDENT, *v.* ASAHEL R. WING AND ANOTHER, AS EXECUTORS OF EDWIN B. NASH, DECEASED, APPELLANTS.

*Oral promise that if one would indorse a note the promisor would pay it — it does not cover renewal notes similarly indorsed.*

One Edwin B. Nash verbally promised one Barnett that if he would indorse for Nash's son an accommodation note, if his son did not pay it he, the said Edwin B. Nash, would do so. Such a note was executed, and was indorsed by Barnett in reliance upon this promise. Payments were made upon such note and the note was several times renewed, Barnett in each case indorsing the renewal note.

In an action brought by him against the executors of Edwin B. Nash, who had died, to recover what he was compelled to pay upon the last renewal note:

*Held,* that the promise was not in the nature of a continuing guaranty, applicable to the renewals of the original note, but was a promise to pay only the original note.

The question as to whether this case came within the statute requiring a promisee to answer for the debt of another to be in writing, considered by MAYHAM, J.

APPEAL by the defendants, Asahel R. Wing and Edwin N. Sanderson, as executors of Edwin B. Nash, from a judgment, entered, upon the report of a referee, in the office of the clerk of Washington county on the 31st day of March, 1891, in favor of the plaintiff for $764.22 damages, besides costs.

The action was prosecuted by the plaintiff to recover upon an alleged parol agreement by defendants' testator, that, if plaintiff would indorse a note for $1,500 for Melvin A. Nash, and Melvin A.

did not pay it, he, the testator, would. The note was solely for the benefit of the maker, Melvin A. Nash. At maturity it was renewed, the plaintiff indorsing the renewal note, on which, at maturity, the maker paid $500, and the note of the maker, indorsed by the plaintiff, was given for the unpaid balance. Other notes were given, on which the maker made small payments. The maker on the last renewal note paid $280.73 when due, and the plaintiff paid the balance.

The defendant's testator having died, the plaintiff brought this action against the defendants to recover the amount so paid by him.

*Edgar Hull* and *C. A. Sturges*, for the appellants.

*Potter & Little*, for the respondent.

MAYHAM, J. :

The referee found as facts the making of the note by Melvin A. Nash, indorsed by the plaintiff, and that, before the indorsement, Edwin B. Nash requested the plaintiff to indorse the note, promising him that if he would do so, he, Edwin, would pay the same when due if Melvin did not; that he would indemnify and hold the plaintiff unharmed on account thereof; and that relying on said promise plaintiff did then indorse said note.

The appellants insist that this finding is not supported by the evidence. The only evidence in support of this finding is found in the testimony of Melvin A. Nash, and his testimony upon that subject is as follows: "I had a conversation with my father, Edwin B. Nash, at or about the date of the original note, a few days after. He told me had asked Mr. Barnett to sign a note for me, or he wouldn't have done it. He said he asked Mr. Barnett to sign the note, and if I didn't pay it he would, or Barnett wouldn't have signed it."

It is insisted by the appellants that this language does not, upon the most favorable construction or interpretation of it for the plaintiff, prove a promise by the testator to guarantee or indemnify the plaintiff or keep him unharmed by signing or indorsing this note, and I am quite inclined to agree with that contention. It would certainly require a forced and unnatural construction of these words to give them the force of a contract or guaranty or indemnity

against the legal consequence of signing or indorsing this note. The most that would fairly be claimed for the language used was an agreement of the decedent to pay this note if the maker failed to do so.

There was nothing in the language to justify the conclusion that the testator intended to pay any other or future notes made by Melvin A. Nash, and indorsed by the plaintiff, upon the failure of the maker to pay, and if it could be held that an agreement by the testator to pay that note, if not paid by the maker, was in the nature of a guaranty that the indorser would not be called' on to pay that note, still such a guaranty could not be made to extend to other and subsequent notes made by Melvin, and indorsed by the plaintiff, to which no reference was made by the decedent. If, as matter of law, the statement of the deceased proved to have been made, can be construed as evidence of a guaranty against the first note, still within the well-settled rules of construction of guaranties it could not be extended to other and subsequent notes not referred to in that statement or in existence at that time.

In the case of *Ellenville National Bank* v. *Kaufmann et al.* (93 N. Y., 281), the court says: "But when the meaning of the language used in a guaranty is ascertained, the surety is entitled to the application of the strict rule of construction, and cannot be held beyond the precise terms of the contract."

Applying this rule, it is difficult to see how the defendants' testator can be held even by the most liberal interpretation of the words imputed to him, to have guaranteed the plaintiff against the consequence of his indorsement of these renewal notes. A guarantor has a right to prescribe the exact terms upon which he will enter into the obligation, and insist upon his discharge in case those terms are not observed. (*William Barns et al.* v. *John Barrow*, 61 N. Y., 39.)

But it is further insisted, upon the part of the appellants, that in any aspect of this case the promise claimed to have been made by the defendants' testator was but a parol collateral promise to answer for the debt, default or miscarriage of another, and not being in writing and subscribed by him was void by the statute of frauds.

If this position is true, then the plaintiff could not recover in this action and the judgment should be reversed. It will be borne in mind that the only promise proved was that if Melvin A. Nash, the

maker, did not pay the note, he, Edwin B. Nash, would. Melvin A. Nash was the maker of the note and the principal debtor. James B. Barnett was the payee and the person to whom, or to whose order the payment was to be made. Edwin B. Nash agreed with the payee that if Melvin A. did not pay the note he would. If, therefore, he was liable on that agreement, it was as the guarantor that Melvin A. would pay the note. If Melvin A. had paid the note, Edwin B's obligation would have been discharged, and hence his agreement was collateral to the performance by Melvin A.

His was not an original agreement to pay this note in any event, but only in the event that Melvin A. did not pay it, and, therefore, collateral to the agreement of Melvin A. Collateral is defined by Webster as "security given in addition to the principal promise or bond." In this case Melvin A. had, by his promissory note, agreed to pay this plaintiff, or to his order, $1,500. This was the principal promise and collateral to that promise, Edwin B. promised that if Melvin A. failed to perform, as he agreed to pay the note, he, Edwin B., would pay it. He was, therefore, the verbal guarantor of Melvin A.'s agreement in the note. A guarantor is one who agrees to see the engagement of another performed, and that is all that can be fairly claimed the plaintiff's testator assumed to do in this case. Bouvier defines a guarantee as "an undertaking to answer for another's liability and collateral thereto; a collateral undertaking to pay the debt of another in case he does not pay." (1 Bouv. Dic., 640.) In *Gallagher* v. *Nichols* (60 N. Y., 444), the Court of Appeals says: "A guarantee is defined by elementary writers to be a promise to answer for the payment of some debt or the performance of some duty in case of the failure of another person who, in the first instance, is liable for such payment or performance." (Citing 3 Kent's Com., 121.)

If this were a legal guarantee of the payment of this note by the maker, it would have passed on the indorsement of the note to the bank, and would have been enforceable by it. (*Everson* v. *Geere et al.*, 122 N. Y., 290.) But if we are right in our conclusion that it was only a parol collateral promise by Edwin B. Nash to answer for the debt or default of Melvin A. Nash, it comes clearly within the definition of a contract void by the statute of frauds.

The respondent insists that as between Barnett, to whom it is

alleged the promise was made, and Edwin B. Nash, by whom it was made, it is not a collateral, but a direct promise, and that there was a sufficient consideration of harm to the promisee to take it out of the operation of the statute. In support of this theory the respondent cites *Mallory* v. *Gillett* (21 N. Y., 412); *Tighe* v. *Morrison* (116 id., 263); *Leonard* v. *Vredenburgh* (8 Johns., 29); *Chapin* v. *Merrill* (4 Wend., 657); *Emerson* v. *Slater* (22 How. [U. S], 28); *McCreary* v. *Van Hook* (35 Texas, 631); and *Tisdale* v. *Morgan* (7 Hun, 583).

In *Mallory* v. *Gillett* (*supra*), the plaintiff was in possession of a boat on which he had a lien for repairs, and the defendant promised by parol that if the plaintiff would surrender the boat to the owner he would pay the charges, some of which he paid at the time, it was held to be an original and not a collateral promise, and not within the statute; and the reason for it seems to be that, though the debtor of another may have been the original cause of the promise, yet if the person to whom it is made relinquishes some right or advantage which he possesses which might have enabled him to obtain satisfaction of his debt, the promise of a third person to pay the debt in consideration of such relinquishment is an original, and not a collateral, promise. No such reason exists in the case at bar, and the cases are, therefore, clearly distinguishable upon principle. In *Tighe* v. *Morrison* (116 N. Y., 263), the defendant applied to the plaintiff to sign an administrator's bond, claiming that he had an interest in the estate and that it was indebted to him, and upon his oral guarantee to save the plaintiff from loss he executed the bond. The principal in the bond defaulted and plaintiff suffered loss. In an action on this guaranty it was held that the case was not within the statute, that the promise was an original one, and legally beneficial to the defendant only; and the court lays down, what seems to be the real distinction between a collateral and original undertaking, and holds that to bring a promise within the statute it must be made to persons entitled to enforce the liability assumed by the promisor. In this case the court says: "In order to attain a position which he represented would be of pecuniary value to himself, the defendant promised to indemnify the plaintiff against the consequences of an act necessary to enable him to enjoy said position. One of those consequences was his own possible default." * * *

Within all these authorities the promise was clearly an original one, and the court adds : " Moreover, the rule seems well settled that a promise not made to the person entitled to enforce the liability assumed by the promisor is not within the statute." In the case at bar the promise was made to the payee of the note, the one primarily entitled to enforce the liability. The note was payable to him or order. Without stopping to denote the distinguishing features of the case at bar from those cited and relied upon by the learned counsel for the respondent, we think them all distinguishable upon principle. In *Kingsley* v. *Balcome* (4 Barb., 138) the court, in discussing this statute, says : " The true rule is that the ' new original consideration ' spoken of must be such as to shift the actual indebtedness to the new promisor, so that, as between him and the original debtor, he must be bound to pay the debt as his own, the latter standing to him in the relation of surety." (*Farley* v. *Cleveland*, 4 Cow., 432 ; *Barker* v. *Bucklin*, 2 Denio, 45 ; *Baker* v. *Dillman*, 21 How., 444 ; *Carville* v. *Crane*, 5 Hill, 483.)

Upon the facts in this case we are clearly of the opinion that the promise proved is capable of being construed into an agreement to indemnify the plaintiff against his indorsement of this note ; was within the statute of frauds, and, therefore, void. If right in this conclusion, it is unnecessary to discuss the other points raised by the appellant on this appeal.

The judgment should be reversed.

LEARNED, P. J. :

The referee finds that the testator, Edwin B. Nash, verbally requested plaintiff to indorse an accommodation note of Melvin A. Nash, in order to have it discounted at the bank, and promised him that if Melvin A. failed to pay, he would pay, and would hold plaintiff harmless ; that relying upon that promise, plaintiff, on the 16th day of May, 1888, indorsed a note of Melvin A. for $1,500. That this note was not paid, but was renewed several times in the same form. On the trial the plaintiff called Melvin A. as a witness, and then executed and delivered to him a general release, which specially released Melvin A. from any liability on account of paying the note or the existing renewal thereof.

Without discussing the validity of the indemnity, I am of the

opinion that Edwin B. was discharged by the renewals. If, as plaintiff claims, the testator's liability became fixed when the first note became payable, still the plaintiff extended the time by making a new note. After he had done this, if Edwin B. had paid the plaintiff, he could not have sued Melvin A. until the new note became payable. Melvin A. had then taken up the original note and was no longer liable thereon. Edwin B. had agreed to indemnify plaintiff for indorsing the first note, not for indorsing numerous renewals thereof. He might be willing to take the risk, that Melvin A. would pay the first note, which came due August, 1888; but not that he would pay or would be liable to pay a note which came due in March, 1890.

Furthermore, I think that by releasing, in open court, Melvin A. from all liability on the original note, and on the existing renewals thereof, the plaintiff discharged the testator's estate. Melvin A. was the principal debtor, and a release of the principal debtor is a discharge of the surety or guarantor. There was no longer anything to guaranty. This defense could not have been pleaded; the act took place on the trial.

For these reasons, I concur in the result of my Brother MAYHAM's opinion.

Judgment reversed, new trial granted, referee discharged, costs to abide event.