CHARLES JONES, Plaintiff, *v.* ORIN S. BACON, as Surviving Executor, etc., of JAMES MCKECHNIE, Deceased, Defendant.

*Statute of Frauds — a promise of indemnity to the indorser of the note of a third. party is an original undertaking — release of the promisor by the release of the indorser's remedy against the maker of the note.*

A promise to indemnify the promisee against the consequences of the liability which might arise out of the relation of indorser, by reason of his indorsement of the note of a third party at the request of the promisor, not being made to the creditor of the maker of the note, the principal debtor, and not being available to the creditor as security for the payment of his debt, and the consideration for such promise being the one of harm to the promisee moving between the parties to it, is an original undertaking, and, hence, is not within the provision of the Statute of Frauds that " Every special promise to answer for the debt, default or miscarriage of another person " shall be void unless in writing and subscribed by the party charged therewith.

The consideration of harm to the promisee, moving between him and the promisor, is sufficient to support such an original promise of indemnity.

Such a promisor of indemnity to the indorser of the note of a third party is entitled to be subrogated, on reimbursing the promisee for what he may have been compelled to pay by reason of his indorsement, to any remedy which the promisee may have against the maker of the note arising out of the relation of indorser, and the extinguishment of that right of subrogation by the promisee, by voluntarily releasing the maker of the note from the liability to the promisee which would otherwise exist by reason of his indorsement, will discharge the promisor from liability to the promisee upon the promise of indemnity.

MOTION by the plaintiff, Charles Jones, for a new trial on exceptions taken at the Ontario Circuit, and ordered to be heard at the General Term in the first instance, after a nonsuit directed by the court on the 17th day of November, 1892.

*William H. Smith*, for the plaintiff.

*Henry M. Field* and *Frank Rice*, for the defendant.

BRADLEY, J.:

For some time prior to April, 1885, the notes of Sherman Kingsbury, indorsed by the plaintiff, had been discounted by the banking firm of McKechnie & Co., at Canandaigua, N. Y., composed of James McKechnie, Alfred Denbow and Jessie McKechnie. Kings-

bury made his note of date April 1, 1885, for $15,000, payable to the order of plaintiff sixty days after its date at the banking house of McKechnie & Co., and as the evidence tended to prove, the plaintiff upon the request of Kingsbury refused to indorse the note, and thereupon the defendant's testator said to the plaintiff that he wanted him to indorse the note and any renewals of it or notes that might be necessary in Kingsbury's business; that if he would do it he, the plaintiff, would never have them to pay or any trouble with them, and that he, McKechnie, would take care of such note or notes. The plaintiff then indorsed the note, which was taken and discounted by that banking firm, and the proceeds of the note placed to the credit of Kingsbury.

In March, 1886, the plaintiff indorsed another note for $8,000 made by Kingsbury, payable at the same place, and it was there taken and discounted for the benefit of Kingsbury and the proceeds used in his business.

This note, by renewals and some addition, was, on June 27, 1888, increased to $12,000, and the $15,000 note before mentioned was, by renewals and some additions, increased to $20,000 on July 12, 1888. Those and the intermediate notes were in like manner made by Kingsbury, indorsed by the plaintiff, and payable at the same place. And those two notes were in like manner renewed up to January, 1889, when the plaintiff, at the request of the defendant's testator and upon the promise that he should be kept harmless, gave a mortgage upon his real estate to secure the $12,000 and $20,000 notes. The mortgage was afterwards foreclosed and the premises covered by it sold pursuant to decree to that effect. And thereafter this action was brought, founded upon the alleged promise of the defendant's testator to thus indemnify the plaintiff against the consequences of the liability he assumed by the indorsement of them.

The question arises upon the exception to the ruling at the Circuit by which the plaintiff was nonsuited, and in support of that result it is contended that the promise of the defendant's testator was within the provision of the statute that "Every special promise to answer for the debt, default or miscarriage of another person," unless in writing and subscribed by the party charged therewith, shall be void.

The promise was in terms an undertaking of the promisor to indemnify the plaintiff and save him harmless from liability upon his indorsement; and it must here be assumed that his indorsement was made by reason of and pursuant to such promise.

The debt represented by the notes was the debt of Kingsbury, the maker of them, and until his default in payment the plaintiff could not be charged upon his indorsement. The promise was not in writing. It was not made to the creditors nor was it one in which they were concerned. It was made to and in behalf of the plaintiff alone and was available to him only.

Whether in such a case the promise is within the Statute of Frauds seems to have been the subject of divers adjudications in the courts of this country and England.

The leading case in this State on the subject as to what promises to pay the debt of another are and are not within the statute is *Leonard* v. *Vredenburgh* (8 Johns. 23). There Chief Justice KENT, by way of illustration, divided cases into three classes:

" *First.* Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the credit given to the principal debtor.

" *Second.* Cases in which the collateral undertaking is subsequent to the creation of the debt, and was not the inducement to it, though the subsisting liability is the ground of the promise without any distinct and unconnected inducement.

" *Third.* When the promise to pay the debt of another arises out of some new and original consideration of benefit or harm moving between the newly contracting parties." The first two classes were held to be within the statute, the third one not so.

In *Mallory* v. *Gillett* (21 N. Y. 412), the promise was made by the defendant to the creditor, and was held to be within the Statute of Frauds. The subject was there very fully considered by Chief Judge COMSTOCK, and while he in the main approved the views of the court in *Leonard* v. *Vredenburgh*, he, referring to such third class, gave Chief Justice SAVAGE the credit of greater precision in *Farley* v. *Cleveland* (4 Cow. 437), in the statement of the proposition that " In all these cases (referring to that class) founded upon a new and original consideration of benefit to the defendant, or harm to the plaintiff, moving to the party making the promise, either from

the plaintiff or original debtor, the subsisting liability of the original debtor is no objection to a recovery."

He, therefore, held it necessary to the completeness of the definition of cases coming within the third class before mentioned that the new or original consideration move to the promisor. Amongst the classes of cases there stated by him as not within the statute was, "1. Where there was no original debt to which the auxiliary promise could be collateral; for example, where the promisee was a mere guarantor for the third person to some one else, and the promisor agrees to indemnify him, or where his demand was founded in a pure tort."

The promise in question in the present case seems to come within that proposition. It also has the support of *Chapin* v. *Merrill* (4 Wend. 657), where the promise of the defendant to indemnify and save harmless the plaintiff from the consequences of his agreement to pay a mercantile firm for goods delivered to another who was the purchaser, was held to be an original and not a collateral undertaking.

The views so expressed by the chief judge in *Mallory* v. *Gillett* had the approval of the court in *Sanders* v. *Gillespie* (59 N. Y. 250–252), and in *Tighe* v. *Morrison* (116 id. 263). And our attention is called to no case in the Court of Appeals in which the doctrine of *Chapin* v. *Merrill* is disapproved.

But *Kingsley* v. *Balcome* (4 Barb. 131), and *Baker* v. *Dillman* (21 How. 444; 12 Abb. 313) are not in harmony with it. The latter of those two cases adopts and follows the former, and in both *Green* v. *Cresswell* (10 Ad. & El. 453) is cited as authority.

The latter case, upon the facts and the principle applied to them, tended to support the conclusion reached in those two cases. The doctrine of that case was afterwards disapproved, and it was overruled in *Reader* v. *Kingham* (13 C. B. [N. S.] 344) and in *Wildes* v. *Dudlow* (L. R. [19 Eq. Cas.] 198).

In *Carville* v. *Crane* (5 Hill, 483, 486), the remark was made that a liberal construction of the statute might be made to embrace the promise in *Chapin* v. *Merrill*, but the two cases were plainly distinguishable and were so treated. The promise of the defendant in the *Carville* case was made to the creditor and was clearly within the statute.

In *Barry* v. *Ransom* (12 N. Y. 462), the plaintiff, at the request

of the defendant's intestate and upon the promise of indemnity, joined with the latter and others as surety in the bond of one Leyden, the principal. The court held that the promise was not within the Statute of Frauds, and Judge DENIO expressed the opinion "that where a person is about to become bound by writing to answer for the default of a third party, and he procures another to be bound with him in the same obligation by promising to indemnify him, that this is an original promise and not within this branch of the Statute of Frauds."

In such case the consideration moving to the promisor may be deemed beneficial to him. But no such distinction was observed in *Green* v. *Cresswell* in the criticism and disapproval of *Thomas* v. *Cook* (8 Barn. & Cress. 728), where such was the relation of the defendant. This latter case was afterwards restored as authority without reference to such distinguishing feature in the promise arising out of the relation of the promisor to the subject of it, so far as appears in *Wildes* v. *Dudlow* (*supra*).

In Ohio, such relation of the indemnitor is held essential to save the promise from the Statute of Frauds. (*Oldham* v. *Broom*, 28 Ohio St. 41; *Ferrell* v. *Maxwell*, Id. 383; 22 Am. Rep. 393.) Held otherwise in some other States. (*Vogel* v. *Melms*, 31 Wis. 306; 11 Am. Rep. 608; *Anderson* v. *Spence*, 72 Ind. 315; 37 Am. Rep. 162.)

The case of *Chapin* v. *Merrill* was cited with approval in both opinions in *Mallory* v. *Gillett*, and the chief judge there said of it that "the promise was not within the statute because it was not collateral to any debt or liability of a third person to the promisee. The third person proposed to contract a debt with fourth parties and the plaintiff agreed to guarantee that debt, the defendant at the same time agreeing to indemnify him for so doing. The plaintiff might have invoked the statute if his guaranty had not been in writing. But the defendant was his indemnitor merely. It was a contingent liability, of necessity original, because there was nothing to which it could be collateral. There was no debt of the third person to the plaintiff."

This is a very clear statement of the nature and effect of the promise in the *Chapin* case, and the reason why it was an original undertaking of the defendant there, which applies with equal force

to the question arising upon the promise in the present case. The chief judge also criticised *Kingsley* v. *Balcome* and the definition there given of a new original consideration as too narrow. And it may be added that such definition given in the *Kingsley* case was applicable to a promise by one person to pay the debt of another.

In the present case, the promise was not in the nature of a guaranty of the payment or collection of the notes, nor was it a promise which, if in writing, would have been available to the creditor. It was a promise to indemnify the plaintiff against the consequences of the liability which might arise out of the relation of indorser he assumed to the notes referred to.

The case of *Chapin* v. *Merrill* still stands as authority in this State. Within the doctrine of that case and the principles enunciated in *Mallory* v. *Gillett* and in some other cases to which reference has been made, the promise in question was an original undertaking, and the consideration was one of harm to the plaintiff moving between the parties to it. And according to the weight of judicial authority, the promise was not collateral in the sense applicable in that relation to the term, because it was not made in behalf of the creditors, nor did its import or purpose permit an appropriation of it by them as security for the payment of the debt. (*Johnson* v. *Gilbert*, 4 Hill, 178; *Tighe* v. *Morrison*, 116 N. Y. 263; *Reader* v. *Kingham*, 13 C. B. [N. S.] 344; *Aldrich* v. *Ames*, 9 Gray, 76.)

In *White* v. *Rintoul* (108 N. Y. 222), the promise was to the creditor to pay a subsisting debt, and was clearly within the statute. The reasoning of Judge FINCH had relation to a promise of a third person to pay the debt of another. In that case, as there held by the judge, the consideration must not only move to the promisor but must be beneficial to him to relieve it from the operation of the statute, and thereby he, in practical effect, as between him and the promisee, becomes the principal debtor. It was in that view he criticised the definition as given in *Leonard* v. *Vredenburgh* of the class of cases not within the statute, and approved the modification of it in *Mallory* v. *Gillett* to make it more specific. The views of the court were similar in *Brown* v. *Weber* (38 N. Y. 187), where Judge GROVER, in referring to the statute, said : " The language shows that the test to be applied in every case is, whether the party

sought to be charged is the principal debtor primarily liable, or whether he is only liable in case of the default of a third person; in other words, whether he is the debtor, or whether his relation to the creditor is that of surety to him for the performance by some other person of the obligation of the latter to the creditor." There it may be observed the test was applied to the promise of a third person to pay an existing debt.

The same may be said in *Ackley* v. *Parmenter* (98 N. Y. 425).

There the promise of the defendant was made to the creditor to pay the debt of another to him, and it was held that the undertaking was collateral, and that " to take the case out of the statute there must be a consideration moving to the promisor, either from the creditor or the debtor. It must be beneficial to the promisor " to impart to it the character of an original undertaking.

In the case at bar the promise of the defendant's testator was not to the creditor or principal debtor. He was, by his undertaking, placed in no relation to either. It was not, therefore, collateral to the contract between them representing the existing debt, nor to any debt of a third person to the plaintiff. The promise was that of mere indemnity to the plaintiff alone, founded upon a new and independent consideration of harm to him moving between him and the promisor and to the latter.

These views lead to the conclusion that the promise of the defendant's testator was an original undertaking, and not within the Statute of Frauds, and that it had the support of a consideration, and was, therefore, valid.

The further defense alleged arises from the fact that the plaintiff, by an instrument under seal to that effect, released and discharged Kingsbury, the maker of the notes, from liability to him which otherwise would exist by reason of his indorsement of the notes. The relation of indemnitor to the plaintiff, assumed by the defendant's testator, was such that he would become liable to the latter for an amount equal to that which he, being required to pay as indorser, should pay upon the notes.

This gave to the indemnitor an interest to protect by paying the notes. He, therefore, had the right, on the default of the maker, to pay them, and on the plaintiff becoming charged with liability as indorser, to pay the notes and become subrogated to the rights of

the creditors as against the maker. This McKechnie did not do, and, therefore, acquired no such right. And so far as payment was made by the plaintiff, or from the proceeds of his property, to the creditors upon the notes, the right of subrogation was his and not available to his indemnitor, and the only right the latter can in that respect take on payment to the plaintiff of the damages sustained by him, by reason of the breach of the contract of indemnity, must come through the plaintiff and be founded upon his relation of indorser.

The right of subrogation is not necessarily dependent upon the conventional relation of principal and surety and in behalf of the latter, but when a person is compelled to pay a claim or has legitimately an interest to protect in so doing, he is entitled to his remedy against the person primarily liable to pay it. In other words, when a person is liable to be charged with that which primarily ought to be borne by another, the former is entitled to the equity of a surety, and on payment to the remedies of the creditor against the person so primarily liable. ( *Wilkes* v. *Harper*, 2 Barb. Ch. 338 ; *Mathews* v. *Aikin*, 1 N. Y. 595 ; *Cole* v. *Malcolm*, 66 id. 363.)

That principle is applicable to the present case. Although the indorsement of the notes by the plaintiff was not made at the request of Kingsbury, the maker, his relation upon the paper for the purposes of remedy on payment of it by him was that of surety to the maker. (*Farmers' Bank* v. *Blair*, 44 Barb. 641 ; *Newcomb* v. *Raynor*, 21 Wend. 108.)

The liability with which the plaintiff, as indorser, was charged to the holders of the notes was the consequence of the default of the maker. A recovery by him against the defendant upon the undertaking of indemnity of the amount he has been compelled to pay on account of his indorsement would not entitle the defendant, on payment of such recovery, to subrogation in the place of the creditors who held the notes against Kingsbury, the maker. That was the right of the plaintiff if he had chosen to take it. The equity of the defendant in that respect, on reimbursement of the plaintiff, would be only to take the remedy which the latter may have had against the maker, who was the primary debtor. This equity of the defendant and the consequent remedy the plaintiff has defeated by his release of Kingsbury.

While the defendant could not require the plaintiff to proceed against the maker of the notes, and as between the parties to this action, the plaintiff may, for the purpose of his remedy, have treated the defendant as primarily liable to him, that did not deny to the defendant the right to take through the plaintiff, on reimbursement of him, any remedy he had against Kingsbury arising out of his relation as indorser of the notes.

The voluntary extinguishment of that right by the plaintiff is an effectual defense to his action.

It follows that the motion for a new trial should be denied and that the defendant should have judgment.

LEWIS and HAIGHT, JJ., concurred.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant upon the verdict.