NATHAN GILINSKY, Plaintiff, *v.* BARNET KLIONSKY, Defendant.
NATHAN GILINSKY and Another, Plaintiffs, *v.* BARNET KLIONSKY, Defendant.

Supreme Court, Broome County, July 2, 1931.

*Hinman, Howard & Kattell*, for the plaintiffs.

*Julius Irving Krefetz* [*Ray T. Hackett* of counsel], for the defendant.

PERSONIUS, J. In these actions each complaint alleges, and in each evidence was given to show, that the defendant in substance agreed orally that if the plaintiffs respectively became obligated upon notes of the defendant's brother, Israel Klionsky, the defend-

ant would indemnify the plaintiffs against loss. According to the evidence, the defendant said: " I'll stand back of every cent you may lose," " I'll pay every cent that you get stuck," " I will make good," " I'll stand behind it." It also appears that subsequently both plaintiffs signed as surety for Israel Klionsky a note of $1,500 to the Morris Plan Bank of Binghamton, and the plaintiff Gilinsky signed as surety for Israel Klionsky a note of $600 to the Peoples Trust Company of Binghamton. The plaintiffs were required to pay to the banks substantial balances on each note and these actions are brought to recover such balances because of the defendant's said oral promises.

Upon the trial before a jury the defendant moved for a nonsuit and a dismissal of each complaint; such motion was made at the close of the plaintiffs' evidence and again when the evidence was finally closed. In each instance the court reserved its decision on the motion with the consent of the defendant. (*Fitzgerald* v. *Colt, etc., Inc.*, 231 App. Div. 176, 178, 179.)

The only ground urged by the defendant when the motions were made was that the alleged promise of the defendant was not in writing and, therefore, not enforcible under the Statute of Frauds.

The jury disagreed and the defendant's motion for a dismissal of the complaint was renewed and briefs submitted by both parties.

Succinctly the question is whether a promise, by one not a party to a note, to one who becomes a surety thereon, to save the latter harmless, is within the Statute of Frauds. We hold that it is not.

There is much diversity of opinion in the several States. The task of examining the many authorities is rendered unnecessary by the very complete consideration thereof in 1 A. L. R. 383, 386; 68 id. 345-348; 25 R. C. L. §§ 108-112; 27 C. J. 155, where the several reasons for the conflicting holdings are stated. It appears that the English decisions were conflicting, accounting to a large extent for the divergent views in the United States. Ultimately the doctrine prevailed in England and a majority of the States, including New York, that such a promise was not within the Statute of Frauds. (*Harburg, etc., Co.* v. *Martin*, [1902] 1 K. B. 778, 784, 785; *Tighe* v. *Morrison*, 116 N. Y. 263, 271; *Jones* v. *Bacon*, 145 id. 446, 449; approved in *Assets, etc., Co.* v. *Roth*, 226 id. 370, 374; *O'Brien* v. *Donnelly*, 169 App. Div. 709; *Anderson* v. *Spence*, 72 Ind. 315, 317, 319.) The contrary is still held in a few of our States, for instance, *Posten* v. *Clem* (201 Ala. 529; 78 So. 883) where it is frankly admitted that the Alabama decisions must be classed with the minority line.

The defendant's promise was not to pay the indebtedness of his brother Israel to the banks; his promise was to pay an indebtedness

not then in existence, but which would come into existence if and when these plaintiffs as guarantors of the banks' indebtedness were required to pay and did pay that indebtedness. Such a promise is not within the Statute of Frauds. To quote from 25 R. C. L. 525: " The better view, however, seems to be that a promise to indemnify a person against liabilities he may incur by reason of some act he may do or perform for a third person, though such third person may also by reason of such act be liable to reimburse the person to whom the promise is made, is not within the statute." To quote also from *Harburg, etc., Co.* v. *Martin* (L. R. [1902] 1 K. B. 778, 784, 785), one of the leading cases which settled the diversity of opinion previously existing in England: " Before leaving these instances I wish to mention one other class, which I do not treat as an exception from s. 4 (Statute of Frauds), but which, I think, does not come within the section at all. I mean the cases which have been spoken of as ' indemnity cases.' Of course, in one sense all guarantees, whether they come within s. 4 or not, are contracts of indemnity. But the difference between those indemnities which come within the section and those which do not is very shortly thus expressed in the notes to *Forth* v. *Stanton:* ' These cases establish that the statute applies only to promises made to the person to whom another is already or is to become answerable.' " Again (at p. 785): " ' In my opinion, there is a plain distinction between a promise to pay the creditor if the principal debtor makes default in payment, and a promise to keep a person who has entered, or is about to enter, into a contract of liability indemnified against that liability, independently of the question whether a third person makes default or not.' "

The defendant in his brief urges that a nonsuit should be granted because the alleged agreement of the defendant was not proven with sufficient definiteness. We do not pass upon this question. It was not urged by the defendant when the motions were made. If it had been, the plaintiffs might, if necessary, have strengthened their proof. We do not think the court should now grant a nonsuit or dismiss the plaintiffs' complaint on a ground that was not expressly urged when the motions were made.

Motions denied. Submit orders accordingly.