No. 47.—SEABORN JONES, plaintiff in error, *vs.* JAMES H. SHORTER, administrator, and SOPHIA H. SHORTER, administratrix, &c. of ELI S. SHORTER, deceased, defendants in error.

A promise, upon *no new consideration*, to execute a bond to indemnify a co-surety against loss, is void, if made after the liability of *all the parties* to the instrument has been incurred.

A promise by one person to indemnify another for becoming security to a *third*, is not within the statute of frauds, and need not be in writing. And the promisee may recover of the promisor the whole of the moneys which he was compelled to pay by virtue of the bond into which he entered. The assumption of the responsibility is a sufficient consideration for the promise.

This was a bill in equity, which, upon motion, was dismissed in the court below, Judge Hill presiding, at May Term, 1846, for want of equity.

The facts, and grounds of error in the case are set forth in the opinion delivered by the Supreme Court, to which the reader is referred.

HENRY L. BENNING, for the plaintiff in error.

HINES HOLT, for the defendant in error.

1st. The contract or agreement set out in the complainant's bill, is within the statute of frauds, and therefore cannot be enforced.

2d. The contract or agreement in said bill charged is too uncertain and indefinite to be enforced, either at law or in equity.

3d. The complainant, by his original bill, does not show himself to have suffered, or sustained any damage, for which he could ask or claim indemnity at the filing thereof; and having no cause of action originally, he could not, by amendment or otherwise, substitute or create such cause of action, and engraft it upon, or make it part of his original bill.

4th. The complainant's own showing, taking together the original bill and amendments, shows that if he had any right or cause of action against the defendants, or their intestate, he had full and ample remedy at law.

5th. Upon the bill and prayer, no decree can be rendered.

These propositions, the defendants in error will maintain upon the following authorities, to wit:

*Roberts on Frauds,* 207–8–9, &c.; *Chitty on Con.* 201–2–3; 2 *Leigh's Nisi Prius,* 1022-3-4; 1 *Henry Blackstone's Rep.* 120; 2 *D. & East,* 80, 81; 7 *D. & East,* 197–200; 1 *Salkeld's Rep.* 27; 14 *Eng. Com. Law,* 239; 3 *Esp. Rep.* 484; 4 *Johns. Rep.* 422; 3 *ib.* 210; 12 *ib.* 291; 13 *Wend. Rep.* 114–120; 14 *ib.* 246; 1 *M'Cord's Ch. Rep.*100; 1 *Stewart's Ala. Rep.* 51; 2 *Story's Eq.* 57–58-59, 67–69 –70; 2 *Wheat. Rep.*336–341; 1 *Johns. Ch. Rep.* 146–7–8-9, 279; 12 *Ves.* 466.

*By the Court*—LUMPKIN, Judge.

The bill states that George W. Dillingham died intestate, leaving an estate of $100,000. That shortly after his death, which was in 1834, John Dillingham came to Muscogee county, to administer on said estate; that, being a stranger, he brought letters of introduction from his brother, William Dillingham, of Westchester, Pennsylvania, to Eli S. Shorter, a copy of which is exhibited, making inquiries as to the situation of said estate, and requesting Shorter's aid and assistance to said John, in the settlement of it; that Shorter determined to give such aid; that Alfred Iverson, a creditor of said George, had already applied for the administration of said estate; that Shorter applied to Jones for said John, to obtain his professional services as attorney at law, in procuring the administration for said John, and got Jones's agreement to do so. That Shorter, on the 11th day of October, 1834, addressed a letter to said William Dillingham, in answer to his, which is also exhibited by copy, in which he informed said William that it had been settled, that said John was to take the sole administration; that he, Shorter, had agreed to become one of his securities, and, if required, to furnish balance. That about that time, in pursuance of his intention, expressed in his said letter to William Dillingham, Shorter called upon Jones to join him in the bond, as security for said John; that to this application Jones gave a decided refusal, alleging that he was scarcely acquainted with John Dillingham; that said John was a stranger in the place; that the estate was too large and too much in debt; that Shorter then desisted, but a few days afterwards renewed the appli-

cation, and received a similar refusal; and for the additional reason assigned that he, Jones, could only incur such responsibility for his friends. That Shorter, finding Jones persisted in his refusal, assured him there was no danger, as John Dillingham had brought letters of introduction to him, Shorter, and was highly spoken of; and that he himself felt solicitous to serve him, and procure the security for him. *That if Jones would join him, Shorter, in the bond, as security, he, Shorter, would indemnify him, Jones, against any loss.* That thus pressed, and having such assurance and promise from Shorter, in which he had full confidence, he, Jones, told Shorter he would consent, if Shorter would add two conditions. The first, to offer himself alone to the court as security for said John, and if not accepted as sufficient, then to offer, in addition, Jones. The second, to take particular supervision over the conduct of John Dillingham, and to see that, as administrator, he conducted himself according to law. That to these conditions Shorter assented; and that in consideration of his said promise to indemnify Jones, he, Jones, consented to become a security. That, at the Court of Ordinary, in Muscogee, in Nov. 1834, a decision was made against Iverson's said application, and in favor of said Dillingham, upon his giving bond and security; that then Shorter tendered himself as such security, and Iverson objected to his sufficiency, and the court required additional security; and that then Shorter offered the name of Jones, with his own, and that this was accepted by the court; and thereupon the bond was executed by John Dillingham as principal, and Shorter and Jones as securities. *Shorter again repeated the assurance and promise aforesaid, and promised that he would draw up and execute a bond in favor of Jones for his indemnity as aforesaid.* That Jones, confidently relying on said promise, and believing that said Shorter would, at a leisure moment, draw up and execute such bond, omitted to call upon him for it immediately, and not long afterwards left for Washington. That after his return from Washington, he requested Shorter to execute it, and he again promised to do it: that, relying with confidence on Shorter, he then believed, as he still does, that Shorter did not neglect to execute said bond from any intention not to perform his promise, but only from inattention and negligence, in the midst of his great quantity of other business, and the fact that it could be done at any time. That although Shorter never refused to execute said bond, yet he neglected it from time to time—although, when spoken to upon the subject, he always promised to do it—till at last he died without having done it. That after his death intestate, the administration of his estate was committed to defendants; that since his death suit has been commenced against Jones, and against him and the defendants on said bond; that if judgment be obtained against them, Jones will have to pay this same, or a part thereof. The bill prays that the defendants, as administrators of Shorter, execute a bond to Jones to indemnify him against loss for signing Dillingham's bond as security; and that they may pay the amounts which may be secured against Jones and said administrators as securities on said bond; that subpoenas issue to said administrators, and that Jones may have such other and further relief as to the court shall seem meet. Afterwards the bill was amended, and thereby Jones further stated, that a judgment had been obtained against him as security on said bond in favor of the justices of the Inferior Court for the

use of the Farmer's Bank of Chattahoochy, for $2,595 principal, $725 78 cents interest, besides costs and interest from the first of May, 1838 ; on which he, Jones, had paid $2,230 on 27th Oct., 1841, leaving a large balance unpaid. That Wm. D. Carnes and wife, as guardians for George W. Dillingham, a minor, had obtained judgment against John Dillingham, as administrator aforesaid, at November Term, 1841, of the Inferior Court of Muscogee county, for $7,425 83 cents, besides interest from 11th November, 1841 ; and that, as security on said bond, he had paid and settled one half of said judgment, and that divers other suits in favor of specified parties were proceeding against said John as administrator on said estate, or had been reduced to judgments.  The defendants, answering separately, denied having any information of the promises alleged in said bill to have been made by said Shorter to said Jones ; and one of the defendants, James H. Shorter, pleads that the promise, if made, was barred by the statute of frauds ; and in his answer insists also on the statute of limitations.  He admits the payment to have been made by Jones on the judgment in favor of justices of Inferior Court, or of Farmer's Bank of Chattahoochy, and in favor of Carnes and wife as guardians, &c., as alleged in the said amended bill, and the allegations in relation to the other debts and judgments therein mentioned, to be true.

Upon motion, the court below dismissed the bill for want of equity, adjudging that the undertaking of Shorter was within the statute of frauds.

Counsel for complainant excepted, and the case is now submitted for our determination, upon writ of error from Muscogee Superior Court.

Having made the foregoing statement, the Judge proceeded as follows :

This bill sets forth two *distinct* promises or undertakings on the part of Eli S. Shorter, deceased, to Seaborn Jones, the complainant.  The *first, that he (Shorter) would indemnify Jones against any loss, if Jones would join him in going security for John Dillingham, on his administration bond ; and this was made before the bond was executed.*  After the bond was executed, by all three of the parties, Shorter again repeated the assurance he had previously given, " *and promised that he would draw up and execute a bond in favor of the plaintiff in error, for his indemnity.*"

Are these *original* or *collateral* promises ?  It is worthy to be remarked, that on the trial below, no notice seems to have been taken of the fact that there *were two* promises, distinct entirely in time, place and substance, *the latter only* of which is sought to be set up in the bill.  As to the *second* promise by Shorter, that he would draw up and execute a bond in favor of Jones for his indemnity, it is clearly void *for want of consideration.*  It was made after administration was granted to Dillingham on the estate of his deceased brother, and when the liability of Jones on the bond had already been incurred by his signature thereto.  It was, therefore, a mere gratuitous undertaking—creating, it may be, a moral obligation—binding in honor, but involving no legal responsibility.  If benefit were to result to Shorter or his friend Dillingham, (at his request the act was done,) administration was obtained.  If loss or inconvenience to Jones, or subjecting him to any charge or obligation at the instance of Shorter, it was irretrievably fixed.  He had already signed the adminis-

tion bond as security ; any promise, then, founded upon this transaction which was consummated, was *nudum pactum.*

Respecting the *first* promise, we are of the opinion, that it is not within the statute of frauds. Mr. Roberts, in his treatise on this statute, says : " that the principal point to be ascertained is, whether or not the party who is to be benefited by the promise, is liable at all for this, is implied in the very notion of a collateral promise. If there is no such liability, there is nothing to which the new promise can be collateral, or in relation to which it can be regarded as an undertaking to answer for the debt, default or miscarriage of another. It must, therefore, without such liability in a third person, be an original undertaking in the party promising."

Tested by this rule, the promise of Shorter is clearly an original undertaking, and so not within the statute of frauds. And this conclusion is equally well warranted upon the authority of the cases in the books. It would be misspending time, to go through the whole of them.

In *W. Thomas* vs. *William Cook,* (8 *Barn. & Cress.* 728,) Bayley, J., says : " Here the bond was given to Morris, as the creditor ; but the promise in question was not made to him. A promise to him would have been, to answer for the default of the debtor. But it being necessary for W. Cook, since deceased, to find sureties, the defendant applied to the plaintiff to join him in the bond and bill of exchange, and undertook to save him harmless. *A promise to indemnify does not, as it appears to me, fall either within the words or the policy of the statute of frauds."* Parke, J. : " This was not a promise to answer for the debt, default or miscarriage of another person, but an original contract between these parties, that the plaintiff should be indemnified against the bond. If the plaintiff, at the request of the defendant, had paid money to a third person, a promise to repay it need not have been in writing ; and this case is in substance the same."

In *Chapin* vs. *Merrill,* (4 *Wendell's Rep.* 657,) the court says :— " This action is brought on the parol undertaking of the defendant to save the plaintiff harmless. This is clearly an original undertaking, and is not within the statute of frauds. It was held by Lord Hardwicke, in the case of *Tomkinson* vs. *Gill,* (*Ambler,* 330,) that if the consideration of the promise take its root in a transaction distinct from the original liability, the case is out of the statute.. This proposition is illustrated by the case in which it is laid down, and by the case of *Read* vs. *Nash.*—1 *Wilson* 305. In the first case, Gill promised the widow and administratrix of an estate, that, if she would permit him to join with her in letters of administration, he would make good any deficiency of assets to discharge the intestates ; in the second, a third person and stranger to a suit for a battery, promised the plaintiff that if he would withdraw his record, and proceed no farther, he would pay him fifty pounds. The person making this promise, which was not in writing, was held liable." It would be unprofitable to multiply decisions upon this point.

The question then recurs, did the court below err in dismissing complainant's bill ? We think not, upon the ground, however, *that he had ample and adequate remedy at common law, on the first promise.* He might either have brought an action of assumpsit to recover damages for a breach of the parol contract, or else Jones might have sued to reimburse himself from time to time, as he was compelled to pay out money, by reason of

this securityship, as did the plaintiffs in the cases in 4 *Wendell* and 8 *Barn. and Cres.*, under precisely similar circumstances.

In the case of *Turner* vs. *Davies*, (2 *Espinasse*, 479,) Lord Kenyon says: "I have no doubt that where two parties become joint sureties for a third person, if one is called upon, and forced to pay the whole of the money, he has a right to call on his co-security for contribution. *But where one has been induced so to become surety at the instance of the other, though he thereby renders himself liable to the person to whom the security is given, there is no pretence for saying that he shall be liable to be called upon by the person at whose request he entered into the security.*" And so, *e converso*, should he have the whole or any part of the debt to pay, it follows that he would be entitled to recover it back, as paid to the other security's use.

Justice Story, in treating of contribution among sureties, (1 *Com. on Eq.* sec. 498,) remarks: "There may arise by implication, from the nature of the transaction, an exemption of one surety from becoming liable to contribution in favor of another. Thus, if one surety should, not upon his own mere motion, but at the express solicitation of his co-surety, become a party to the instrument, and such co-surety should afterwards be compelled to pay the whole debt, in such a case he would not be entitled to contribution, unless it clearly appeared that there was no intention to vary the general right of contribution, in the understanding of the parties.—*Mayhew* vs. *Crickett, Swanst. R.* 193 ; *Taylor* vs. *Savage,* 12 *Mass. Rep.* 98–102. So, if there should be separate bonds given, with different sureties, and one bond is intended to be subsidiary to and a security for the other—the other in case of a default in payment of the latter—and not a concurrent primary security ; in such a case, the securities in the second bond would not be compellable to aid those in the first bond by any contribution."—*Craythorne* vs. *Swinburne,* 14 *Ves.* 159 ; *Cook* vs. ————, *Freem. Rep.* 97.

For the reason, then, that Jones had full redress at law on the first, which is the only legal promise, and alleges no reason in his bill, either for want of proof or otherwise, why equity should entertain jurisdiction of the matter, we cannot sustain the objection to the judgment below. It must be affirmed with costs.