Tower et al. *v.* Grocers Supply & Storage Co., Appellant.

[Marked to be reported.]

*Bailment—Insurance—Contract.*

Where a person engaged in the storage business makes it a part of such business to effect insurances in companies when requested by customers to do so and protects himself for his advances and charges by holding the goods, the agreement to insure is in the direct line of his business and not a contract of insurance requiring certain essential elements to constitute it. It is not a voluntary and gratuitous act, but an undertaking in connection with the bailment.

*Bailment—Storage—Negligence—Fire.*

A bailee for hire who receives goods for storage is bound to exercise ordinary diligence and care, but he is not liable for the loss of the goods by fire, where it does not appear that the fire was caused by his own negligence.

*Negligence—Evidence—Scintilla—Watchman.*

In an action against a warehouse company for damages for loss of goods stored in a storage warehouse, where the evidence fails to show the cause of the fire, it is error to submit the case to the jury. The failure to keep a watchman is not evidence of negligence in such case.

Argued Oct. 30, 1893. Appeal, No. 184, Oct. T., 1893, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1892, No. 117, on verdict for plaintiffs, Theodore S. Tower et al. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Assumpsit for goods destroyed by fire in defendants' storage warehouse.

At the trial before McCLUNG, J., it appeared that plaintiffs stored with defendants, the owners of a storage warehouse, two wagon loads of household goods. Plaintiff averred that when the goods were deposited they directed that they should be insured. This was denied by defendants. The evidence on this

subject and as to the alleged negligence of defendants appear by the opinion of the Supreme Court.

The court charged in part as follows:

"In the first place, were these defendants negligent in the matter of protecting the goods against fire, or protecting their warehouse, because it was in the destruction of their warehouse that these goods were burned. You have not a great deal of testimony upon the subject here; you have not perhaps as much as you might have. We have not very full information from either side as to just what variety of goods was stored in this warehouse. Of course, the character of a great many of them has cropped out, but there has not been a systematic effort, so far as I recollect, on either side, to show you definitely what was in this warehouse. That might, of course, be of considerable importance, because the character of the goods would aid you in determining what was reasonable and ordinary care with regard to their protection. If they had especially inflammable goods there, then ordinary care would be higher and greater care than if they had goods there which could not be easily ignited. You have, however, as I have said, some information with regard to the nature of this warehouse. It appears that they had a cold storage attachment, which necessitated the constant use, I believe, day and night, of an engine, for the purpose of refrigerating rooms for that purpose. That appears to have been under the same roof, in the same building, as these other goods. You have the information that the warehouse was six stories high. These goods were stored in the sixth story, I believe, and you have some information as to some of the things that were on the other floors. That other information is largely incidental. The defendants say that they took the advice of the Board of Underwriters, parties skilled in the matter of dangers from fire, and that they took the precautions that they suggested; that they put barrels of water, I believe, on the different floors, and water buckets and fire extinguishers; that they swept up the building three times a week, possibly every day, but I think three times a week, and they had a man examine it the last thing before he left every night, and that it was examined upon this particular night in that same way. They admit that they had no watchman there during the night; that the building was empty except that the engineer was pres-

ent during night; but they state the engineer's sole duty was to attend to the engine, that he was under no obligation to go any place else ; in fact it appears to have been his duty not to go to any place else, if I recollect the testimony correctly, but to stay with his engine; of course that would not apply to a case of emergency, if he could do anything.

" The plaintiffs, on the other hand, call your attention to the fact that this engine involved the keeping of fire there,—involved the keeping of considerable heat, which they allege was attended with more or less danger to all the floors of this building; and they also call your attention to the fact that while they had these water barrels and buckets and fire extinguishers upon the different floors, which would seem to indicate the possibility of fire,—the necessity or propriety for something of that sort being there,—yet, by their own account, at night they had no one to use them, and, consequently, the fact of their having them there, involving an admission that there would or might possibly be a necessity for their use, taken into connection with the fact that there was nobody there to use them, was an evidence of negligence rather than of care. You will, however, take in connection with that the allegation of the defendants that there was less likelihood for the occurrence of any fire at night than in daylight, because there were not the same fires there. There were some fires on the other floors, or at least lights, at times during the day, but they say there was nothing of that sort at night,—nothing more than the heat from the engine and perhaps the torch used by the engineer about the engine.

" You will take all these things into consideration and determine whether or not this fire was the result of the negligence of the defendant company,—whether or not there was a want of ordinary care upon their part, which resulted in this fire and this damage to the goods of the plaintiffs.

" The mere fact of itself that there was a fire should not lead you to conclude that the defendants were negligent, and hence liable, nor can I say that the mere fact that there was not a watchman there should convict them of negligence. I cannot say, under all the circumstances, that the failure to have a watchman would be an evidence of negligence. There may be circumstances under which, if there was nothing more than

that, it should not be submitted to a jury even; [but in this particular case, that circumstance, with the others, is proper to be submitted to the jury,] [5] and they are to look over the whole field, and, exercising their good judgment, determine whether or not these parties exercised ordinary care; or were guilty of negligence by their failure to exercise such care."

Defendant's points were as follows:

1. Request for binding instructions.    Refused. [1]

" 5. That the burden is upon the plaintiff to prove that, at the time the alleged agreement was made to insure plaintiff's goods, that the amount of insurance, the time for which it was insured, the rate of insurance, the premium to be paid, and the risk insured against were all agreed upon; a want of any of these elements is essential and makes the contract an incomplete one, and the plaintiffs cannot recover."    Refused. [2]

" 8. There is no evidence in this case showing that the defendant did not exercise ordinary care of plaintiffs' goods; as a bailee for hire it is not responsible for this accidental loss by a fire which was not caused by its negligence."    Refused. [3]

Plaintiff's point was among others as follows:

" 6. That it is a question for the jury as to whether the absence of such a watchman was not an omission of due care. *Answer:* The jury should take this fact with the other facts in evidence into account, when they come to determine whether or not there was negligence.    We cannot say that the failure to keep a watchman would under all circumstances justify a finding of negligence." [4]

Verdict and judgment for plaintiffs for $533.43.    Defendant appealed.

*Errors assigned* were among others (1–5) instructions, quoting them.

*J. J. Miller*, for appellant, cited: On the question of insurance: Patterson v. Benjamin Franklin Ins. Co., 81* Pa. 454; Weeks v. Lycoming Fire Ins. Co., 7 Ins. L. J. 552; Strohm v. Hartford Ins. Co., 37 Wis. 621; May on Insurance, sec. 27; Tyler v. Ins. Co., 4 Robertson (N. Y.) 151.

On the question of negligence: Steamship Co. v. Smart, 107 Pa. 492; Mackenzie v. Cox, 9 C. & P. 632; Fenner v. R. R.,

44 N. Y. 505; Chapman v. Great Western R. R. Co., 28 W. R. 566; Schouler on Bailment, 106 and 107.

*John Wilson, D. S. McCann* with him, for appellees, cited: On the question of insurance: New York Tartar Co. v. French, 154 Pa. 273.

On the question of negligence: McCarty v. N. Y. & Erie R. R., 30 Pa. 251; W. C. & Phila. R. R. v. McElwee, 67 Pa. 311; Johnson v. R. R., 70 Pa. 357; R. R. v. Pearson, 72 Pa. 169; Crissey v. R. R., 75 Pa. 83; McKee v. Bidwall, 74 Pa. 218; Whart. Neg., §§ 452, 468, 573; Pike v. R. R., 40 Wis. 583; Hatchell v. Gibson, 13 Ala. 601; Wilson v. R. R., 62 Cal. 164; Reeside's Exr. v. Reeside, 49 Pa. 322; Robinson v. Threadgill, 13 Ired. 39; Bridge Co. v. Lowell, 70 Mass. 474; Ives v. Carter, 24 Conn. 402; Butts v. Collins, 13 Wend. 154; Brown v. Boorman, 11 C. & F. 1; 1 Add. Torts, 6th ed., p. 20.

OPINION BY MR. JUSTICE THOMPSON, December 30, 1893:

The appellant was the owner of a large building used for the storage of goods containing rooms equipped with refrigerating machines for cold storage purposes. A fire originated in the second story and destroyed the entire structure, with its con-- tents. Among the latter were the goods of the appellees which were stored there. The present suit was brought to recover their value. The appellees alleged that their loss was the result of appellant's negligence in not keeping their goods safely, and in not insuring them, having agreed to do so. As to the latter, one of the appellees, Miss Tower, testified that when she paid the storage on these goods the assistant in charge of appellant's office inquired whether she wanted the goods insured, that she requested that appellant should have it done, and that it agreed to do so. That after the fire she called, and being told these goods were not insured she said, "I left orders for you to have the goods insured." The assistant however denies that she gave any order to have them insured. The evidence was therefore for the jury to determine whether the appellant made an agreement with appellees to obtain for them an insurance upon the goods in question. It is contended by appellant that, as the proofs do not show the essential elements of a parol contract for insurance, no agreement was proved. The

appellant was engaged in the storage business, made it a part of such business to effect insurances in companies when requested by its customers to do so, and protected itself for its advances and charges by holding the goods. A contract made for that object therefore would be in the direct line of its business and not one of insurance requiring certain essential elements to constitute it. It would not be a voluntary and gratuitous act, but in fact would be an undertaking in connection with the bailment. Miss Tower testified that the appellant's representative asked her if she wanted the goods insured, and she replied that she thought they being there insured them. He replied: "Not unless you leave orders to that effect." She says that she then gave the order. If this testimony be not successfully contradicted, it shows the course of the business was to obtain insurances for bailors, that appellant so indicated to appellees, who acted upon it, that it accordingly entered into the contract and made it part of its duties to obtain the insurance for which it was to be paid, and for the expenses of which as well as other charges it was to hold the goods. The learned judge therefore properly submitted the evidence in regard to the alleged contract to the jury, and the assignment of error that he refused to charge: " That the burden is upon the plaintiff to prove that, at the time the alleged agreement was made to insure plaintiff's goods, the amount of the insurance, the time for which it was insured, the rate of insurance, the premium to be paid, and the risk insured against, all were agreed upon; a want of any of these elements is essential and makes the contract an incomplete one and the plaintiffs cannot recover," is not sustained.

But there was error in submitting to the jury the question of negligence or want of care. The appellant was a bailee for hire and was bound to exercise ordinary diligence and care. Its liability could only be the result of a failure to exercise such care or diligence. The proofs do not show a want of this care or diligence, nor do they warrant an inference of either. The cause of the fire is not shown and apparently is not known. One witness saw the fire coming out of the second story of the building, and knocked at the front door. The engineer in charge, holding a small torch such as engineers usually have, came towards the door, of which he had no key, and then went back

towards the engine room. He subsequently explained to witness that he did so in order to turn off the ammonia tanks, manifestly to avoid an explosion. This witness testified there seemed to be something like grease or butter that was burning and dripping down through the elevator shaft. Another witness testified that the engineer had a light in his hand, stood in the front of the door, hallooed out something and started back. This was the extent of the plaintiff's proof.

On the part of the defendant it was testified there was no inflammable material or fire in the building. One of appellant's witnesses, an employee, testified that on the evening of the fire, prior to it, he went to the top of the building and had in his hand a little circular oil lamp with a wick out through the top. That when he reached the top of the building he blew it out and descended in the dark to the first floor, where, having placed a cover over the wick of the lamp, left it in his room back of the engine room. Having done so he left the building in the charge of the engineer. The testimony clearly does not justify an inference of negligence, and does not amount to a scintilla. The learned judge therefore erred in refusing to charge : " There is no evidence in this case showing that the defendant did not exercise ordinary care of plaintiff's goods. As a bailee for hire, it is not responsible for this accidental loss by a fire which was not caused by its negligence."

This judgment is reversed, and a venire facias de novo is awarded.