JOSEPH KLADIVO, Appellant, v. AXEL MELBERG, Appellee.

No. 39487.

NOVEMBER 21, 1929.

REHEARING DENIED APRIL 16, 1930.

*Tobin, Tobin & Tobin,* for appellant.

*Nichols, Nichols & Milroy* and *C. H. E. Boardman,* for appellee.

MORLING, J.—The arguments here present two questions: First, whether the evidence is sufficient to support a finding of a consummated agreement between plaintiff and defendant; and second, if so, whether the agreement is within the statute of frauds.

While one of the grounds of motion to direct was, and defendant suggests in argument, that the agreement claimed by plaintiff to have been made was abandoned because defendant  was not asked to sign and did not sign the note, no such defense is raised in the pleadings. Abandonment is the relinquishment, renunciation, or surrender of a right. Its existence depends on

intention and act evidencing intention to abandon. The act of relinquishing must be unequivocal and decisive. 1 Words & Phrases 4; Idem (2d Ser.) 2. In our view of the case, the evidence does not sustain the claim of abandonment. The evidence is apparently fragmentary in not showing fully the negotions between the parties. This may be due to concentration of attention on the defense of the statute of frauds.

The evidence, consisting of the testimony of plaintiff and the two Wlachs and, as part of plaintiff's cross-examination, his original and first substituted petitions, is, in substance, as follows: Plaintiff says that Ernest, who was then alone, "first spoke to me about the note to be signed * * * The next day * * * Axel Melberg was with him * * * Ernest said that his father and his wife and he would sign the note. * * * Axel Melberg * * * said if I sign that note that I don't lose nothing, that he pay everything. After that talk, I'went with the Melbergs to Wlachs. It was in the evening. * * * Axel Melberg * * * says he will sign the note for his son. The next day, I signed the note. * * * I never signed it if the old man would not say he sign it, and if he never promise me first I would never lose anything if I sign it. If I sign it, he would pay it, or I never would sign it. * * * I did not see Axel Melberg for a year or three years afterwards. I knew when I signed it that he hadn't signed it. I went to him and asked him to sign the note. That was three years after the first time I seen him. * * * He [defendant] says to me, during the driving, he says, if I sign the note instead of him, I will never lose anything,—he pay it." Plaintiff says, on cross-examination, "Axel Melberg said, if I sign the note, he sign it too; * * * he would see that I didn't lose anything;" that he expected defendant to sign it. His original and first substituted petition (apparently drawn by a former attorney) do not allege any agreement for indemnity.

Frank Wlach testifies that defendant, Ernest, and plaintiff came to his house. Ernest "wanted to borrow $5,000, and came over there through Mr. Kladivo. I told them they could have it, provided he would give me good security. * * * He said his father would go on the note. * * * The father said he would sign it. That was the substance of the arrangement or talk that was made there that night. * * * The note was for $5,000." Mrs. Wlach says that Ernest "wanted to borrow the money, and my

husband said he would let him have the money if the note was properly executed; and Mr. Axel Melberg said he would sign the note. Mr. Joseph Kladivo was present at the time. * * * The next day, they phoned me first,—I was expecting Mr. Axel Melberg, Mrs. Ernest Melberg, and Mr. Ernest Melberg,—that they would all three come, but only Mr. Ernest Melberg came. * * * Mr. Ernest Melberg and Mr. Kladivo went down with me to the bank, and I got the money, and delivered it to Ernest Melberg * * * on account of the note that was given me.'' The note was apparently drawn at this time, and in part at least by plaintiff. Plaintiff and the Wlachs are related. The son's wife signed.

I. Plaintiff is entitled to the benefit of that interpretation of his evidence and of all inferences therefrom, if reasonable, most favorable to his case; and if reasonable minds may differ as to the conclusions to be drawn from the evidence, he is, if any of such conclusions would sustain right of recovery, entitled to go to the jury. The court should not, without compelling reason, deprive the plaintiff of the right to have the jury ascertain, if it may be done within the limits of the evidence and all reasonable inferences to be drawn from it, the real intent of the parties, and give effect to it. See *Gould v. Gunn*, 161 Iowa 155, 163.

The last substituted petition is founded on contract. It alleges that defendant agreed (1) to sign the note and (2) to indemnify plaintiff from loss on account of signing it as surety. No question of inconsistency in the agreement as testified to, or of variance or of pleading, is raised. Plaintiff was required to prove no more than necessary to make out a case. Agreement to sign as cosurety with plaintiff would involve the duty of making contribution, and would be, in effect, agreement for partial indemnity. *Edmondson v. Ballard*, 149 Va. 798 (141 S. E. 776). As between the parties to this action, defendant, according to the petition, had the duty of indemnifying. According to the evidence, defendant might be found to have assumed the responsibility of paying the note and of indemnifying the plaintiff against all liability. Plaintiff's loss caused by defendant's not signing (if the agreement was merely to sign as cosurety, without the further promise to fully indemnify), would have been one half the amount which plaintiff was compelled to pay. His loss from defendant's failure to pay or indemnify

in full, if such was the agreement, would have been the full amount paid by plaintiff because thereof.

The contract, according to the evidence, was that, if plaintiff signed the note with defendant's son, (1) defendant would sign it, and (2) defendant would pay the note, and would see that plaintiff would lose nothing because of signing it; or (3) it might be found that plaintiff was to sign the note, instead of defendant, and defendant was to pay it, and plaintiff to lose nothing from signing it.

Whether defendant did or did not sign the note, it might be found, upon the evidence, that defendant induced plaintiff to sign, and agreed to fully indemnify him for doing so. Whether  or not the length of time of the loan or the rate of interest was specifically agreed to by defendant, or to his knowledge, does not appear. Defendant contends that he is not shown to have agreed to the amount of the loan; but, taking the evidence in its entirety, as we must, as of a continuous transaction, it may be found that the loan, as understood by defendant, was to be for $5,000.

Defendant's argument that he is not shown to have agreed to the time or rate of interest of the loan would have more force if the agreement contended for were merely that he was to sign as a cosurety with plaintiff; but the testimony is that defendant agreed to sign the note and to pay it, and plaintiff would lose nothing, and if plaintiff signed, instead of defendant, plaintiff would never lose anything,—defendant would pay.

The question is whether the evidence, as matter of law, shows no more than an incomplete agreement, looking to the making of a complete contract in the future,—one merely envisaging the execution of a note by defendant and plaintiff as cosureties; whether, until defendant agreed specifically to the time and rate of interest, or other conditions of the note, the agreement is incomplete; or whether the jury might find that the defendant positively agreed to the negotiation of a loan of $5,000 and the execution of a note representing it, and agreed to indemnify plaintiff if he would sign a note. This question was not raised by defendant's motion to direct, one ground of which was that any oral statement by defendant to plaintiff that he would indemnify was abandoned and abrogated. We have

held that the trial court may disregard the absence of specific grounds of motion to direct, and may direct a verdict on its own motion. *Johnson v. Ryder,* 84 Iowa 50. In harmony with this rule, if, on all the evidence, the plaintiff had no right to go to the jury, the ruling sustaining motion to direct was without prejudice, and must be sustained.

If defendant, in legal form, agreed to become a surety for his son on a future contract to be made by the son and plaintiff as surety thereon, or to indemnify plaintiff, and plaintiff was induced to become such surety and sustained loss, it would be a fraud on plaintiff for defendant to repudiate the contract, and the law will not permit him to do so. *Mann v. McDowell,* 3 Pa. St. 357 (45 Am. Dec. 649). See *First Nat. Bank v. Mayr,* 189 Ind. 299 (127 N. E. 7). If defendant bound himself to sign as surety, or to indemnify plaintiff, he was obligated from the time the loan was made. *Webster v. Smith,* 4 Ind. App. 44 (30 N. E. 139).

The subject-matter of the negotiations was the effort of defendant's son to obtain a loan of $5,000, and his need to furnish security. Defendant made manifest to plaintiff his purpose to assist his son in this matter. In rendering such assistance, defendant, with his son, applied to plaintiff to go as such security, and agreed to indemnify him. The close relationship of blood and apparent confidence of defendant in his son cannot be ignored. Through plaintiff, they applied to plaintiff's relatives, the Wlachs, for the loan. Defendant had previously agreed, not merely to indemnify plaintiff from all loss on account of signing, but had agreed to pay the note. Defendant, so far as appears, raised no question concerning the time of the loan or the rate of interest. Time and interest were necessarily in contemplation. It was the son who was getting the loan, and he was to be the principal on the note. The son, as between him and the parties to this suit, might naturally be expected to pay, and to negotiate the terms. It would unduly hamper the making of contracts of indemnity, and indeed, entrap indemnitees in such contracts, to hold, as matter of law, that all the details of the liability against which indemnity is to be made must be definitely settled and agreed to by the indemnitor before he can be held liable. By the very nature of the contract, the liability depends upon acts and occurrences and agreements the details

of which are frequently not known, and are not generally made important. Defendant might effectually make it a part of his undertaking with plaintiff that plaintiff or the son or others should arrange the definite time and rate of the loan of $5,000, and that defendant, as between him and plaintiff, would pay, as so arranged. 1 Page on the Law of Contracts (1st Ed.), Section 271; 1 Williston on Contracts, Sections 44, 47, 49; *Blaney & Morgan v. Hoke,* 14 Ohio St. 292. Defendant evidenced no concern as to these details. The thing in view was to obtain the security and procure the loan that the son desired. The conversations were in the evening. The money was in the bank. While Mrs. Wlach expected that defendant would come with the others the next day, she does not say that defendant promised to do so, or promised to see her, further than that he was to sign; nor does the testimony necessarily indicate that defendant expected to participate in arranging the details which more immediately affected the son. Taking into account all the circumstances and the expectations as they appear in the record, we think it may reasonably be found that defendant had agreed to the making of a loan of $5,000 to his son for such reasonable time and on such reasonable interest as the son would consent to, and to the execution of a note accordingly, on defendant's promise of indemnification, and that such was the understanding of the plaintiff. Defendant's proposition was that, if plaintiff would do the act requested,—sign the note,—defendant would sign and indemnify. The jury, we think, might reasonably find that plaintiff was justified, the next day, in doing that act,— signing the note,—and assuming that, when he signed, defendant would also sign, and would hold plaintiff harmless.

To avoid misapprehension, we may say that we are not to be understood as expressing any opinion upon the evidence or the inferences that may be derived from it. We are merely holding that it is within the province of the jury to infer the truth of the testimony to which we have referred and the validity of the inferences that may be drawn therefrom.

The case as to the present inquiry is not different in principle from the ordinary one of an agreement that a seller may deliver goods to the proposed purchaser, or the lender make a loan to the borrower, and the guarantor will see that the seller or lender is paid. If defendant had told plaintiff to loan his

son $5,000 and defendant would guarantee its payment, it would be implied that the son and plaintiff were to settle the time and rate of interest. Time and interest were in contemplation, and agreement that reasonable time and reasonable rate of interest were to be settled upon by the borrower was implied. *Harvey v. First Nat. Bank,* 56 Neb. 320 (76 N. W. 870); *Lehigh Coal & Iron Co. v. Scallen,* 61 Minn. 63 (63 N. W. 245); *Tower v. Grocers Supply & Stg. Co.,* 159 Pa. St. 106 (28 Atl. 229). See, also, *Petty v. Gacking,* 97 Ark. 217 (133 S. W. 832); *James v. E. G. Lyons Co.,* 134 Cal. 189 (66 Pac. 210); *Bishop v. Eaton,* 161 Mass. 496 (37 N. E. 665); *Davis v. Patrick,* 141 U. S. 479, 489.

The existence of a contract, "meeting of the minds," intention to assume an obligation, the understanding, are to be determined not alone from words used, but in the situation, acts, and conduct of the parties, and from their situation and the attending circumstances, and by the inferences which mankind would ordinarily and reasonably draw therefrom. *Port Huron Mach. Co. v. Wohlers,* 207 Iowa 826; *In re Estate of Newson,* 206 Iowa 514; *McConnell v. Lamontagne,* 82 N. H. 423 (134 Atl. 718); *Wood v. Duff-Gordon,* 222 N. Y. 88 (118 N. E. 214).

It does not expressly appear that plaintiff notified defendant of his intention to sign, or of the fact that he had signed. Defendant, however, requested plaintiff to do an act. The plaintiff did the act. Defendant was acting in the interest of his son. It may be found that there was an expectation that the parties would later formally complete the transaction. Defendant's active interest in the transaction seems to have been satisfied with the result of the evening's interview. In these and the other circumstances, we think the question of the sufficiency of the offer and acceptance was for the jury. Idem; 13 Corpus Juris 284; *German Sav. Bank v. Drake Roofing Co.,* 112 Iowa 184, 191; *Lineaweaver's Estate,* 284 Pa. St. 384 (131 Atl. 378).

II. The main question argued is whether the oral testimony was admissible under the statute of frauds, which reads:

"Except when otherwise specially provided, no evidence of the following enumerated contracts is competent, unless it be in writing and signed by the party charged or by his authorized agent: * * * 2. Those wherein one person promises to

314

answer for the debt, default, or miscarriage of another * * *"
Code, 1927, Section 11285.

While this statute in its terms is one of evidence, in its construction, practical application, and operation it is substantially the same as the English statute. *Westheimer v. Peacock,* 2 Iowa  (Clarke) 528. The promise, to be within the statute, must be "to answer for the debt, default, or miscarriage of another." To be within the statute, the promise must be collateral, secondary, superadded to that of another. If by the promise the promisor incurs an original or primary obligation of his own, one not merely collateral or superadded or secondary to that of another, it is not within the statute. The question is one of intent, and is to be ascertained from the language used, in the light of the situation and circumstances in which it was made. The agreement set up in this case was not one between lender and proposed surety, by which the latter agrees to pay the former the borrower's debt. The promise here was not to pay the Wlachs if the son defaulted, but was to sign the note and pay it, or see that it was paid, and thereby to indemnify the plaintiff against liability. Such a promise is original and primary, and not within the statute of frauds. *Guild & Co. v. Conrad,* 2 Q. B. (1894) 885, 886; 1 Williston on Contracts 872, 885, 889, 893. See *Turner v. Davies,* 2 Esp. (Eng.) 479. The promise was to pay the note. *Equitable Tr. Co. v. National Sur. Co.,* 214 Pa. St. 159 (63 Atl. 699). The contract is one of indemnity. A contract of indemnity is original, not collateral. 31 Corpus Juris 419. If plaintiff, on defendant's request, had paid the Wlachs $5,000 for plaintiff's son on defendant's promise to repay him, the case would not be within the statute of frauds. That plaintiff furnished to the Wlachs the security of his credit, instead of money, can make no difference in principle. This court, in harmony with the great weight of authority, is committed to the doctrine that such a contract is not within the statute of frauds. *Mills v. Brown,* 11 Iowa 314; *Van Riper v. Baker,* 44 Iowa 450, 452; 2 Page on the Law of Contracts (2d Ed.), Section 1249; 1 Williston on Contracts 926 *et seq.*; 27 Corpus Juris 155; *Edmondson v. Ballard,* 149 Va. 798 (141 S. E. 776); *Wahl v. Cunningham,* 320 Mo. 57 (6 S. W. [2d Ser.] 576); *United States Fid. & Guar.*

*Co. v. Tucker,* 165 Ga. 283 (140 S. E. 866).; *Jones v. Bacon,* 145 N. Y. 446 (40 N. E. 216) ; *Barry v. Ransom,* 12 N. Y. 462; *Resseter v. Waterman,* 151 Ill. 169 (37 N. E. 875) ; *Alphin v. Lowman,* 115 Va. 441 (79 S. E. 1029, Ann. Cas. 1915A 863) ; *McCormick v. Boylan,* 83 Conn. 686 (78 Atl. 335, Ann. Cas. 1912A 882) ; *Jones v. Shorter,* 1 Ga. 294 (44 Am. Dec. 649) ; *Dyer v. Staggs,* 217 Ky. 683 (290 S. W. 494) ; *Rose v. Wollenberg,* 31 Ore. 269 (44 Pac. 382) ; *Calloway v. O'Neil,* 158 Tenn. 7 (12 S. W. [2d Ser.] 364) ; 25 Ruling Case Law 525 *et seq.*; *Anderson v. Spence,* 72 Ind. 315; *Tighe v. Morrison,* 116 N. Y. 263 (22 N. E. 164, 5 L. R. A. 617). See, also, 41 Harvard Law Review 689 *et seq.*

On analogous principles, defendant's agreement to sign as cosurety was original, and not collateral, and not within the statute. *Edmondson v. Ballard,* 149 Va. 798 (141 S. E. 776).; 25 Ruling Case Law 525; and cases above cited.

It does not expressly appear that defendant expected personally to benefit or profit from his promise, and defendant seeks thereby to distinguish the cases cited. Personal benefit to the promisor may, in particular cases, be a determinative circumstance. There may, however, be a personal benefit and the promise be, nevertheless, collateral. The promise may be original and primary although its performance will result in the discharge of the debt or obligation of another. The question is whether, under all the circumstances, the purpose and object are to create an original or primary obligation, or one merely secondary and collateral. *Richmann v. Beach,* 201 Iowa 1167; *Clay v. Walton,* 9 Cal. 328.

"As said by this court in *Emerson v. Slater,* 22 How. 28, 43 : 'Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability.' To this may be added the observation of Browne, in his work on the Statute of Frauds [3d Ed.], Section 165 : 'The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against

the actual obligations of the defendant himself.' * * * There is force in this contention, as it implies that someone else was also bound; but the real character of a promise does not depend altogether upon the form of expression, but largely on the situation of the parties, and the question always is, what the parties mutually understood by the language,—whether they understood it to be a collateral or a direct promise.'' *Davis v. Patrick,* 141 U. S. 479, 488, 489.

See, also, *Peele v. Powell,* 156 N. C. 553 (73 S. E. 234); *Whitehurst v. Padgett,* 157 N. C. 424 (73 S. E. 240); *Harlan v. Harlan,* 102 Iowa 701; *Carraher v. Allen,* 112 Iowa 169; *Bader v. Hiscox,* 188 Iowa 986, 993; *Johnson v. Knapp,* 36 Iowa 616; *Anderson v. Lemker,* 180 Iowa 167; *Wachal v. Davis,* 164 Iowa 360; 1 Williston on Contracts 886. See *Schaafs v. Wentz,* 100 Iowa 708, 712; 27 Corpus Juris 140 *et seq.*

If the promise was made, it was of no concern to plaintiff to ascertain whether or not defendant ought to make it, or would be benefited by it. Plaintiff might presume that defendant, in so contracting with him in order to bring about a resulting contract between plaintiff and the Wlachs, was serving a purpose of his own. Browne on the Statute of Frauds (5th Ed.), Section 162; *Gibbs v. Blanchard,* 15 Mich. 292; *McCormick v. Boylan,* 83 Conn. 686 (78 Atl. 335); *Tarr v. Northey,* 17 Me. 113 (35 Am. Dec. 232).

If Wlach were seeking to recover on defendant's agreement with him to sign with Ernest, then we would have a case of an attempt to hold one collaterally on a verbal contract to answer for the debt of another, which is the case of *Dee v. Downs,* 57 Iowa 589, relied on by defendant, but not applicable to the case presented here.

Though the statute is, in terms, one of the admissibility of evidence, it was for the jury to determine from all the evidence whether an agreement was actually consummated, and if so, what it was, and whether defendant's promise was to sign the note as cosurety, or to pay it, or see that it was paid, or both. *Richmann v. Beach,* 201 Iowa 1167.

The motion to strike amendment to abstract is overruled. —*Reversed.*

ALBERT, C. J., and FAVILLE, DE GRAFF, WAGNER, and GRIMM, JJ., concur.

EVANS, STEVENS, and KINDIG, JJ., dissent.