RAY COAL MINING COMPANY, Appellee, v. JOHN Y. ROSS et al., Defendants and Appellants.

**CONTRACT:** Construction—Different Rights—Entirety. A contract
1 granting to second party the right to mine coal under eight different tracts of land at certain royalties, a different time limit being placed on each tract ranging from 3 to 20 years, second party having the option to mine or not to mine with no liability for damages if he did not, but second party agreeing to first mine the coal from under the said land, where the time limit was the least, ''at the earliest moment practicable,'' was held to be an *entirety* and that second party by allowing the time limit to expire as to several tracts without notice of an intention to exercise its option thereby lost its right to exercise any option as to those tracts which had not yet expired by the terms of the writing. *Held* also, second party was not bound under the contract until he gave notice of intention to exercise his option.

**CONTRACT:** Abandonment—Intent—Non-User. Abandonment of a
2 contract involves an intent and purpose to surrender the rights acquired. Non-user may not of itself constitute abandonment but if accompanied with other circumstances evincing such an

intention, on which the other has acted, an abandonment is effected.

*Appeal from Polk District Court.*—HON. CHAS. S. BRADSHAW, Judge.

SATURDAY, FEBRUARY 20, 1915.

ACTION to cancel certain rights in coal land acquired under an agreement with the owner. Judgment and decree for the plaintiff.—*Affirmed.*

*Read & Read,* for appellees.

*Clark, Byers & Hutchinson,* for appellants.

1. CONTRACT: construction: different rights: entirety.

GAYNOR, J.—On the 21st day of February, 1909, J. A. Garver and Helen A. Garver, his wife, and one John Y. Ross entered into the following agreement:

This Article of Agreement made and entered into this 21st day of February, 1908, by and between J. A. Garver and Helen A. Garver, his wife, parties of the first part and John Y. Ross, party of the second part, all of Polk County, Iowa, Witnesseth:

The parties of the first part hereby grant unto the party of the second part the right to mine the coal from under the following lands for and during the several times mentioned hereafter with each of the following separate parcels or tracts of land, to wit:

1. The Northwest quarter of the Northeast quarter for the term of twenty years from date.

2. The west five acres of the North half of the Southwest quarter of the Northeast quarter, and the East fifteen acres of North half of the Southwest quarter of the Northeast quarter to and until March sixteenth, A. D. 1911.

3. The South half of the Southwest quarter of the Northeast quarter to and until February ninth, A. D. 1912.

4. The West half Northwest quarter of the Southeast quarter to and until June 19th, A. D. 1913.

5. The East half of Northwest quarter of the Southeast quarter to and until April 15th, A. D. 1911.

6. The Northwest quarter of the Northeast quarter of the Southeast quarter for the period of twenty years from February 1, 1908.

7. The Northeast quarter of the Northeast quarter of the Southeast quarter to and until March fourth, A. D. 1912.

All the above described tracts of land being in Section number nineteen in Township seventy-eight North, Range twenty-four west, containing in all one hundred thirty acres.

The party of the second part shall have the right to install entries, construct passages, tramways or railways underground for the purpose of removing the coal underneath the lands hereinbefore described to any hoisting shaft which he may sink or construct upon other lands or upon the aforementioned tracts of land after securing the right to sink said hoisting shaft from the owners of the surface, the party of the first part being the owners only of the coal underlying said lands, and having the right to mine and remove said coal but having no rights to the surface.

The party of the second part is to pay to the parties of the first part the sum of ten and one-half cents for every ton of 2,000 pounds of merchantable lump coal mined from said lands, and passing over a screen with bars not over one and three-eighths inches apart. Mine run coal unscreened is to be paid for at the rate of seven cents per ton of 2,000 pounds.

Said royalty of ten and one-half and seven cents is to be paid to said first parties on or before the 20th day of each month for the coal mined from said lands during the preceding month and at the time of said payment the party of the second part agrees to furnish party of first part with a statement of the number of tons of each kind mined during the preceding month. No royalty is to be paid on any pea, nut or slack coal mined.

It is further agreed that all screened lump coal mined and also all mine run coal shall be correctly and accurately weighed upon perfect scales by competent and honest weigh-men without delay and a record kept of same. After the expiration of each calendar month and within twenty days thereafter, said second party shall furnish said first party at his (second parties') office in Des Moines, a detailed statement in writing of all coal mined during the preceding month, and the quantity and kind lump or mine run mined with names of the persons mining same and the amount mined by each. Said statement to be under oath when so demanded in writing by said first party.

Said second party agrees to preserve unaltered the daily bulletin, records, pay roll, and books by which miners are paid for mining said coal for one year previous, which bulletins, records, payrolls and books shall show the name of each miner and where such miner worked during preceding month, and said first party by himself or agent shall have right to exam-ine same at all reasonable times.

The said party may use the right of way under the sur-face and the entries under the surface for the purpose of removing and mining coal from other and adjoining lands leased or owned by him.

The second party shall not be liable for any damage caused to surface on account of caving of the surface by reason of removing coal or the pumping out of water. Said royalties being full compensation therefor.

It is understood and agreed that the said party of second part, however, shall not be held liable or bound to take said coal or mineral except at his option, and in event of his aban-doning or not making the purchase thereof as herein provided, he shall not be held liable for any damages or compensation therefor, or growing out thereof.

It is expressly agreed and understood that neither of the parties hereto have any right to enter upon the surface of said land, that said second party must procure said right from the

present owners of said surface if they desire to so enter upon said surface for any purpose whatever.

The second party agrees to mine the coal from under the said land where the time limit is the least at the earliest moment practicable, so as if possible to have the coal mined before time limit expires.

This instrument of agreement was, on or about the month of July, 1909, assigned by the said John Y. Ross to the defendant, the Iowa Coal Mining Company. Thereafter, the name of this defendant was amended and changed to the Des Moines Coal Company, and the Des Moines Coal Company, defendant, is a successor in interest to the Iowa Coal Mining Company, and entitled to whatever rights it had under said instrument.

It appears that neither John Y. Ross nor either of the coal mining companies, defendants, took any action under this lease. They never mined or attempted to mine any of the coal under the land described in said lease. It appears that whatever right they acquired under said lease to mine coal under the land described in the 2nd, 3rd, 5th and 7th divisions of the lease has expired by the terms of the lease itself. The only rights in controversy in this suit are the rights, if any, acquired by John Y. Ross and assigned to these other defendants in the land described in the 1st, 4th and 6th divisions of the lease.

The plaintiff brings this action to enjoin the defendants from mining or removing coal, and prays that the contract hereinbefore set out be declared forfeited, and the same cancelled, and the defendants be restrained from having or claiming any interest in or right to the coal underlying the premises described in the 1st, 4th and 6th divisions of said instrument, and that they be restrained from interfering with the plaintiff in the mining and removing of coal under said land.

It appears that on the 16th day of February, 1912, the said John A. Garver and Helen A. Garver entered into the following written agreement with the Ray Coal Mining Com-

pany, plaintiff herein, which, so far as material, provides as follows:

"The parties of the first part do hereby grant to the party of the second part, upon the terms and conditions stated in this agreement, the right to mine and remove the coal underlying the surface of the following described premises, situated in the County of Polk and State of Iowa, to wit: The Northwest quarter of the Northeast quarter and the Northwest quarter of the Northeast quarter of the Southeast quarter, all in Section nineteen, Township seventy-eight, Range twenty-four for a period of ten years from and after the date hereof, but not longer, and the West one-half of the Northwest quarter of the Southeast quarter of Section nineteen, Township seventy-eight, Range twenty-four, for a term commencing on the date hereof and ending June 19th, A. D. 1913. And subject to all rights of the present owners of the surface of said lands and to such arrangements as the party of the second part may make with them, the parties of the first part further grant to the party of the second part the right and privilege of prosecuting and drilling, or otherwise testing the coal underlying the surface of said premises, in order to determine the amount of mineral and coal underlying said premises, and to make such underground entries and perform such work as is necessary for the successful and proper mining and removal of said coal, it being understood and agreed that the parties of the first part are not the owners of the surface of said premises, and do not grant or undertake to grant any rights therein or thereon."

This lease is the basis of the plaintiff's right to maintain the action. John A. Garver and wife filed a petition of intervention in which they join with the plaintiff in asking the relief prayed for against all the defendants.

On the issues thus tendered, a decree was entered for the plaintiff and interveners as prayed, and from this decree defendants appeal.

It will be noticed that the land described in the agreement entered into on the 16th day of February, 1912, between the Garvers and the plaintiff is the same land described in the 1st, 4th and 6th divisions of the lease between the Garvers and · John Y. Ross, under which defendants claim, and it will be further noticed that the time limit fixed for this land between the Garvers and John Y. Ross has not expired by its terms; that the time limit fixed for all the other land described in the lease has expired by the terms of its own limitation.

It will be noticed further that the rights to the land described in the 2d division of the Ross agreement expired on March 16, 1911; to the land in the 3d division on the 9th day of February, 1912; to the land described in the 5th division on April 15, 1911; to the land in the 7th division on March 4, 1912; and it will be further noticed that by the last clause of the lease between Ross and the Garvers, Ross agreed to mine the coal from under the land where the time limit is the least, at the earliest moment practicable, so as if possible to have the coal mined before the time limit expired.

It will be further noticed by the terms of this contract, that it was understood and agreed that Ross was not held liable or bound to take the coal or mineral under any of the land except at his option, and that in the event he abandoned or did not make the purchase thereof as provided in the contract, he should not be held liable for any damages or compensation therefor or growing out thereof.

It further appears from this record that neither Ross, nor the companies claiming under him, ever gave the Garvers any notice that they elected to take under said lease, or sought to avail themselves of the option therein given at any time before the making of the lease to the plaintiff, or the commencement of this action. It not only appears that nothing was done by Ross, or those claiming under him, in the way of mining coal or making efforts to mine coal from any of the land, but that Ross and his assignees allowed whatever right they had to mine coal from the land described in the 2nd, 3rd,

5th and 7th divisions of the lease to expire by the limitation therein expressed, and it appears that in allowing their rights to expire, they lost by such time limit any right to the East half of the Northwest quarter of the Southeast quarter which separates parts of the land in controversy, to wit, separates the West half of the Northeast quarter of the Southeast quarter from the Northwest quarter of the Northeast quarter of the Southeast quarter. This lease was an entirety with, however, different time limits as to different portions of the land.

There is nothing in the lease itself, or in this record, indicating a purpose or intent upon the part of either party to this original contract, that Ross or his assignees should have a right to avail themselves of some of the provisions of the other portions of the lease in their favor, and abandon other portions of the lease. It seems to have been contemplated by the terms of the contract itself, that if the grantee therein named, Ross, desired to avail himself of the provisions of the lease, he should proceed at once, or without unreasonable delay, to mine the coal from under the land where the time limit is the least, and, if possible, to have the coal mined from such land before the time limit expired. This was not done. No effort to accomplish this purpose was made by Ross or his assignees. The contract was an entirety.

The only question in this case is a question of fact to be ascertained from the contract itself and the conduct of the parties subsequent to the making of the lease. A careful review and analysis of the whole record satisfies us that, even if it be conceded that it was not a mere option, still the defendants must be held to have abandoned whatever rights they acquired in the contract to the land now in dispute. Abandonment involves an intent and purpose to surrender the right acquired, accompanied by acts indicating that purpose and intent. It is a question of fact and not of law. See 2 Washburn, Real Property, 82.

2. CONTRACT: abandonment: intent: non-user.

Of course, mere non-user of a right acquired by contract

does not, in itself, constitute an abandonment of that right, but non-user coupled with other circumstances and conditions which expressly show an intention to abandon, when acted upon by the other party interested, has the effect of destroying the rights acquired.

However, a careful analysis of the agreement upon which defendants depend for their rights in this case makes it, we think, reasonably plain that Ross was not bound or obligated under the contract until he elected to take the coal and be bound by the contract. There is practically no dispute in the evidence in this case, and we do not feel called on to set it out, but are contented to say that we have made a careful study of the record before reaching the conclusion announced. We think the decree of the trial court is right, and it is, therefore,—*Affirmed.*

Deemer, C. J., Ladd and Salinger, JJ., concur.