EDWARD J. MCKEON et al., Appellees, v. CITY OF COUNCIL BLUFFS, Appellant, et al., Interveners, Appellees.

SEPTEMBER 28, 1928.

*P. C. Rasmussen, Verne Benjamin,* and *Carl F. Benjamin,* for appellant.

*Crofoot, Fraser, Connolly & Stryker* and *Tinley, Mitchell, Ross & Mitchell,* for appellees.

MORLING, J.—Proceedings for severance were formerly triable at law. Code Supplement, 1913, Section 622; *In re Town of Le Roy,* 135 Iowa 562; *In re Town of Union,* 177 Iowa 402. The procedure provided by the present statute is a suit in equity. Code of 1924, Section 5617. This cause, which was brought in equity, under the new statute, is therefore triable here *de novo.*

The present channel of the Missouri River at Council Bluffs is comparatively uniform in its course. Prior to 1877, however, the channel at one point took a sharp bend northwardly for about two miles, curving thence to the west, south, and southeast back to the line of its more general direction at a point about a half mile from the point of departure, thus forming an indentation or loop or oxbow on the Nebraska side. In 1877, by avulsion the river cut through between the points mentioned, leaving about 1,200 acres within the oxbow on the northwesterly or Nebraska side of the river. The Supreme Court of the United States, in *Nebraska v. Iowa,* 143 U. S. 359, decided that this territory remained a part of the state of Iowa. Prior to the avulsion, and up to the entry of the decree in this case, this oxbow territory was within the corporate limits of the city of Council Bluffs. To sever it from the city is the object of the present suit. The territory, except on the present river side, is surrounded by the city of Omaha. The width of the river between the oxbow territory and the rest of the city of Council Bluffs is about three eighths of a mile. . The current is swift. There is no bridge there. There are no means of travel from this territory to the main part of Council Bluffs except two bridges, the western ends of both of which are in the state of Nebraska. The Illinois Central Railroad Company owns a toll bridge over a mile east of the oxbow. Conditions are such as to make any important use of that bridge impracticable. The usual route between the oxbow territory and the main part of Council Bluffs is west and south three and three-fourths miles through Omaha to the Douglas Street bridge. This is also a toll bridge. The street car company does not give transfers to Council Bluffs. The distance from the center of the oxbow district over the Douglas Street bridge to the nearest high school in Council Bluffs is six miles; to the business center of Council Bluffs, seven and seven-eighths miles; to the city hall and courthouse, eight and one-fourth miles; to the nearest fire station, six and one-half miles.

About three fourths of the territory in controversy is used for farming and truck gardening. A number of residence additions and some industrial· plants occupy the remainder. The northern section of the old river channel now forms a body of

water known as Carter Lake, the shores of which on both sides are used to a considerable extent for clubs, resorts, and summer and permanent homes. The number of permanent residents of the territory is about 700, few, if any, of whom have their business occupations east of the river. There is in the territory one public school building, constructed partly of wood and partly of brick. It has four rooms and four teachers. The instruction is to and including eighth-grade work. No other public buildings and no public park are there. Some water mains have been laid by the city of Council Bluffs. They..are being paid for by the local taxpayers. The water for these mains is furnished through the Omaha waterworks. There are no sewers except such as have been laid by private enterprise. There is one stretch of pavement. It was originally constructed of cobblestones, and later resurfaced. Original and resurfacing cost was paid for privately. Some of the streets have been graveled, but at private expense. The streets generally are unimproved. The city of Council Bluffs furnishes 1,000 feet of fire hose. Fire protection, however, comes from Omaha. Council Bluffs has furnished police protection during summer seasons, but calls upon the Omaha department in cases needing more expeditious attention than Council Bluffs department can give. In case of arrest, the prisoner must be taken through Nebraska territory to the station east of the river. Reliance for police protection is chiefly upon the Omaha force. The city of Council Bluffs furnishes 14 street lights, costing in the aggregate $226 a year. The current is provided by a private company, supplying both Omaha and Council Bluffs. There is no public disposal of garbage. Telephone connection is with the Omaha central. Toll charges must be paid for communication with Council Bluffs proper. Postal service is from the Omaha post office.

Since the agitation for severance, defendant's city council has made one or two annual appropriations of $1,000 for street maintenance, of which only $500 was paid. The taxable valuation of all the real and personal property in Council Bluffs is $6,789,321, besides that of agricultural property, $194,750. The taxable valuation of the oxbow real estate is $163,427, and of the personal property $4,752. The tax levy on the oxbow real estate for corporation purposes in 1925 was 67.8 mills, $11,080.-54; and in 1926, 74.8 mills, $12,224.33. The 1925 levy in-

cluded for general sewer $621.01, main sewer, $621.01, improvement, $621.01, light, $686.38, fire maintenance, $1,078.61, fire equipment, $228.79, fire pension, $147.07, grading, $457.59, garbage, $310.50, waterworks, $768.10, waterworks sinking, $310.50, school, around $21,000. The 1926 distribution is proportionately the same.

I. The purpose of municipal incorporation is to furnish local self-government and co-operative service. The needs of the municipality and the benefits to the property and residents thereon are the sole justification for inclusion of land within municipal limits. A municipality in this state may not, against the will of the owner, retain within its limits land merely for the purpose of deriving revenue from it. *Evans v. City of Council Bluffs*, 65 Iowa 238. It is the settled law of this jurisdiction that property may not be taxed for a purpose in which the owners or occupants have no interest, from which they can derive no benefit, and which is solely for the benefit of others, and that taxation for municipal purposes of agricultural lands which derive no benefit from the municipal government cannot be sustained. *Morford v. Unger*, 8 Iowa (Clarke) 82, 92; *Deiman v. City of Fort Madison*, 30 Iowa 542. See *McKinney v. McClure*, 206 Iowa 285. The only evidence on the subject of possible direct means of communication between the oxbow territory and Council Bluffs proper over Iowa territory is that furnished by plaintiffs, and objected to by defendant, that a bridge would be of the length of 4,000 feet, and would cost approximately $1,250,000. The city of Council Bluffs has heretofore made no substantial use of the territory, except as a source of revenue. On the record before us, it must be held that the oxbow territory is not, and will not be, needed for the growth of the city, or for other municipal purposes. From the standpoint of municipal needs and convenience and the welfare of the inhabitants, were it not for state lines, the territory would belong to Omaha, and not to Council Bluffs. No benefit of importance is derived from the municipal government of Council Bluffs, and there is no ground for holding that it will in the future work to the good of the inhabitants to have the oxbow territory continued as a part of that city. Whether it should be organized into a separate municipality is, of course, not before us.

II. The city sets up laches, acquiescence, and equitable

estoppel, based upon the absence of any objection to the inclusion, or of any effort to detach the territory for fifty years, since the physical separation resulting from the change in the river. (Of course, the statute of limitations is not involved.) Laches is a defense in equity, but only when to allow it as a defense would be equitable. Mere delay that does not work disadvantage or harm to others is not such laches. Every case is governed by its own circumstances, and laches does not prevail as a defense where the adverse party has been placed in no worse position on account of the delay. *Dennis v. Harris*, 179 Iowa 121, 142; 4 Pomeroy's Equity Jurisprudence (4th Ed.), Section 1442.

Equitable estoppel does not arise in the absence of reliance and injury. If the adverse party has not acted to his prejudice, he is in no position to assert an equitable estoppel. *Harley v. Merrill Brick Co.*, 83 Iowa 73; 2 Pomeroy's Equity Jurisprudence (4th Ed.), Section 805; 21 Corpus Juris 1202.

Acquiescence in proper cases may amount to a defense, either as working a ratification or an estoppel. 21 Corpus Juris 1216; 2 Pomeroy's Equity Jurisprudence (4th Ed.), Section 816 *et seq.* Ratification is the giving of validity to the act of another, implying power to do the act by the ratifier, and the doing of the act without his full authority by such other. See 7 Words & Phrases 5927 *et seq.*; 4 Idem (Second Series) 123 *et seq.*

No prejudice has resulted to the city of Council Bluffs from the delay in asking for severance. The city has, during the years, subjected the property in question to municipal taxation, without reciprocal benefits. Submission to an inequitable tax for one year can give no right to the imposition of it the next year. Such payment of taxes cannot be effectively set up as estoppel. *Deiman v. City of Fort Madison*, 30 Iowa 542, 550.

Furthermore, the property owners have had, each and every year, the statutory right to severance. The condition giving them that right was a continuing condition, and the statutory right was a continuing right. None of the suggested defenses can apply to such a continuing and ever existing and present right. *Deiman v. City of Fort Madison*, 30 Iowa 542; *Smith v. Jefferson*, 161 Iowa 245; *MacGowan v. Village of Gibbon*, 94 Neb. 772 (144 N. W. 808).

The city relies upon *State ex rel. West v. City of Des Moines*, 96 Iowa 521. That was an action in quo warranto, to test the validity of annexation proceedings. There the city claiming jurisdiction had acted to its prejudice during the delay. The proceedings were subject to confirmation. The defects alleged were such as might be waived. The city had acted to its prejudice. The case was not one of a continuing right.

Severance was properly decreed. *Ashley v. Town of Calliope*, 71 Iowa 466; *Evans v. City of Council Bluffs*, 65 Iowa 238; *Luick v. Incorporated Town of Belmond*, 109 Iowa 361; *Johnson v. Incorporated Town of Forest City*, 129 Iowa 51; *McKean v. City of Mount Vernon*, 51 Iowa 306; *Way v. Town of Center Point*, 51 Iowa 708.—*Affirmed*.

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.