LOLA E. CREERY et al., Appellants, v. TOWN OF OKOBOJI, Appellee.

No. 42050.

April 4, 1934.

Clifford E. White, and W. K. Herrick, for appellants.

Harry E. Narey, for appellee.

Kintzinger, J.—The only question in this case is whether or not under the law and the evidence the plaintiffs were entitled to have certain territory in the defendant corporation severed therefrom.

The action is brought under section 5617 of the Code which provides that:

"Territory may be severed from any city or town by proceeding as follows: 1. A majority of the resident property owners of such territory or the city or town may bring suit in equity in the district court therefor. * * * 2. If the court finds that such territory, or any part thereof, shall be severed from any city or town, it shall thereupon appoint three disinterested persons as commissioners to examine into the matter and the equitable distribution of the assets," etc.

This statute designates no specific statutory grounds upon which a severance should be granted. The rules governing a severance of territory have been established by the courts. Under such rules the material matters for consideration in determining the question of severance are: (1) Should the territory be retained for sanitary purposes? (2) Should it be retained for police and fire regulation and protection? (3) Is the territory reasonably needed in anticipation of the future growth of the town? (4) And a minor consideration is the wishes of the resident owners of the real estate in question.

These matters should be determined from the facts and circumstances in relation thereto as shown by the evidence.

The permanent resident population of the town is about one hundred seventy-eight. The town, however, is a summer resort located on the shores of Lake Okoboji, and the summer population is from fifteen hundred to twenty-five hundred. Five hundred of these reside on the lake shore lots in the territory sought to be severed. Many of the largest and best homes within this territory were erected on the lake shore lots within the territory within the last few years.

It is a matter of common knowledge that the natural growth of a summer resort town is along the lake shore line. So, in Okoboji, its growth extended naturally in a northerly direction. This growth has extended from the south end of the town, where the post office and two stores are located, to the present northerly limits of the territory sought to be severed. The town is laid out and platted in a manner natural to a summer resort town. This accounts for its greater length than width. The town was built up and gradually extended to its present length during the last twenty-five or thirty years. It is about four and a half miles long and from a quarter of a mile to a mile wide. All of the territory bordering the lake shore is platted into lots.

There is practically no business section in the town. What is called the business section is located at the extreme south end of the town, where there are two stores, a fish market, a depot, and a post office. The balance of the town, extending to the extreme north end, is the residential section. The evidence shows that Lake Okoboji is one of the finest lake summer resorts in the state. The largest hotel upon the entire lake is situated in Okoboji, and is called "The Inn", having about two hundred rooms. The Inn is located about halfway between the north and south ends of the town. The territory which the plaintiffs seek to have severed from the town is about two miles in length, and, if severed, would almost cut the town in two. The south end of this territory is not far from "The Inn". All of the lake shore property, in the territory sought to be severed, is platted into about 118 lake shore lots and contains about 78 cottages and homes of summer residents. The houses in this territory are of permanent construction, and are used from two to five months during the year. They are substantially built, and valued all the way from $300 to $20,000. The main street of the town runs from the south to the north end of the town, and abuts the east end of all of the shore lots in the territory sought to be severed. The territory sought to be severed is in the best residential section of the town.

There are only four resident property owners in the territory sought to be severed, three of whom signed the petition therefor. The balance of the property owners are nonresidents, many of whom joined in the application for the severance. Of the resident property owners, one owns a 4-acre tract, another a lot of 100 feet frontage, and the third a lot about 200 by 200 feet, none of which are on the lake shore. If severance was granted, it would cut out of this town about two miles of the best residential section thereof. The general nature, character, and use of the property in the territory sought to be severed is practically the same as that in the rest of the town.

The evidence also shows that a short time prior to the commencement of this action the city held an election for the purpose of installing a water plant and sewer project. This election was lost by a few votes. Shortly thereafter an agitation was started by the nonresident property owners in the territory in question for the purpose of seceding from the town. The election was held with a view of providing a good water supply therein to the residents of the town.

The town of Okoboji furnishes police protection to the entire town including the territory sought to be severed. While it is true that they have but one policeman, it is also true that the protection afforded by him was adequate for the whole town.

The evidence also shows that fire protection is afforded the town, including the territory sought to be severed. Arrangements for fire protection were made with the adjoining town of Arnold's Park, which maintains a fire engine and apparatus equipped to pump water from the lake.

The evidence also shows that the principal street in this town runs along and abuts upon the east portion of the lake shore lots in the territory sought to be severed. This street is maintained by the town, and affords ready access to the main highways at the north and south ends of the town.

Many of the cottages in this town, including those in the territory in question, have their own water system. They also have cesspools and septic tanks, wells, and outside toilets in close proximity thereto. The evidence shows that much garbage accumulates during the summer months. The garbage is collected by a man appointed by the city and hauled to a city dump, where it is disposed of by the town; the collector being paid by the property

1316

owners. Within the territory sought to be severed there are thirty-six private septic tanks, a few cesspools, and many outside toilets. A survey of the sanitary conditions in the town, including the territory sought to be severed, was made by a state health department engineer a few years ago and a report of his findings filed with the town council. This report shows that the water in most of the wells analyzed proved to be unsafe. The purpose of the election referred to was to remedy the sanitary conditions by providing a water system and a sewer system for the good health of the town. It is fair to presume from the evidence that this election would no doubt have carried if it had not been for the agitation against it by nonresident property owners, and the abnormal financial conditions then prevailing everywhere.

It is contended by the plaintiffs that the only object in keeping that portion of the territory, sought to be severed within the town limits is for the sole benefit to be derived from the collection of taxes therefrom, and that the property in question is not necessary for corporate purposes or the future growth of the town. It may be conceded that, if the benefits derived from taxes was the sole purpose of retaining the property in the town, plaintiffs' contention would be correct. Evans v. City of Council Bluffs, 65 Iowa 238, 21 N. W. 584.

It has been held, however, by this court, in Johnson v. Town of Forest City, 129 Iowa 51, 105 N. W. 353, that "The applicants should not be allowed to get out simply to escape taxation. If the territory is reasonably needed for any of the purposes above suggested, the owners thereof should pay their just proportion of the public burdens." As supporting this view, see Hanson v. Cresco, 132 Iowa 533, 109 N. W. 1109; In re Town of Leroy, 135 Iowa 562, 113 N. W. 347; Peek v. City of Waterloo, 138 Iowa 650, 116 N. W. 735; Christ v. City of Webster City, 105 Iowa 119, 74 N. W. 743.

We do not feel that the evidence in this case is sufficient to show that the town is seeking to retain the property solely for the purpose of receiving an income therefrom by taxation. The evidence shows that the school district in the township outside of Okoboji includes the territory sought to be severed, and no financial advantage would be gained because of taxes levied for school purposes. The territory in question would have to pay only eight or nine mills less than the taxes now paid if it was not part of the town.

It is a settled rule of law that the questions of main importance in determining the question of retaining territory in a town are the necessity of retaining the same for sanitary and health regulations and for the purpose of affording police and fire protection to the town. Platt Co. v. Inc. Town of Van Meter, 170 Iowa 509, 153 N. W. 178; Johnson v. Forest City, 129 Iowa 51, 105 N. W. 353; In re Town of Union, 177 Iowa 402, 159 N. W. 178.

In Johnson v. Town of Forest City, 129 Iowa 51, loc. cit. 53, 105 N. W. 353, we said:

"It is quite important that a town retain control over territory upon which any considerable number of people reside in close proximity to the main business *or residential section,* in order that it may exercise its police powers thereover; and, if it be desirable residential territory and is likely to be built up in the future, there is every reason for retaining control thereof. See Monk v. Town of George, 86 Iowa 315, 53 N. W. 240; Christ v. Webster City, 105 Iowa 119, 74 N. W. 743." (Italics ours.) In the case at bar the territory sought to be severed is not only desirable residential territory (likely to be built up in the future), but is already fine residential property, already "built up".

In most of the cases awarding a severance it appears that the land sought to be excluded was used almost wholly, if not entirely, for agricultural purposes; that the lands therein were not platted; that there were no residence properties therein; and that the land in the territory sought to be severed was not needed for the future growth of the city or town. Monk v. City of George, 86 Iowa 314, 53 N. W. 240; Lorimor v. Town of Lorimor, 196 Iowa 774, 195 N. W. 199.

In the latter case we said:

"If the real purpose of the appellant in seeking to hold the territory within the corporate limits is to derive income therefrom by way of taxation, then, the land should be relieved of this burden. However, the petitioners should not be allowed to secede from the corporation limits of the town for the sole purpose of escaping taxation, if it appears from the evidence that the territory in question is reasonably needed for public purposes. In such event, the owners should pay their full and just proportion of the public burdens." Evans v. City of Council Bluffs, supra; Ashley v. Town of Calliope,

1318

71 Iowa 466, 32 N. W. 458; Platt Co. v. Inc. Town of Van Meter, supra; Christ v. City of Webster City, supra; Johnson v. Inc. Town of Forest City, supra; In re Town of Leroy, supra; Monk v. Inc. Town of George, supra.

In the case at bar all of the property sought to be severed bordering on the lake shore was not only platted but already built up and was a part of the best residential section of town, and is reasonably needed for the public welfare.

One of the requirements of the statute is that the majority of the resident property owners sign the petition. There were only four resident property owners in the territory sought to be severed. Three of these, constituting a majority, signed the petition. This, however, is not controlling if it appears from the evidence that the territory sought to be severed is reasonably necessary for the welfare of the town. Mosier v. Des Moines, 31 Iowa 174; Wiedwald v. Dodson, 95 Cal. 450, 30 P. 580; In re Leroy, 135 Iowa 562, 113 N. W. 347; Elliott v. Pardee, 149 Cal. 516, 86 P. 1087; Cole v. Watertown, 34 S. D. 69, 147 N. W. 91.

The territory sought to be excluded from the corporation lies adjacent to and contiguous with the balance of the residential section of the town. The police and sanitary regulations should, for the benefit of the residents of the whole town, be under the control of one head. From the evidence in this case, we believe it for the best interest of the whole town that such control remain in the defendant town.

The court below held that the property in the territory sought to be severed was reasonably necessary for the regulation of sanitary conditions, for the regulation of police and fire protection, and also for the future growth of the town. We think the conclusion of the lower court, based upon the evidence offered in this case, was correct, and the decree entered therein is therefore hereby affirmed.

CLAUSSEN, C. J., and STEVENS, KINDIG, and DONEGAN, JJ., concur.

MITCHELL and ANDERSON, JJ., dissent.

MITCHELL, J. (dissenting)—I find myself unable to agree with the majority and respectfully dissent. As I read this record, the sole and only purpose of keeping the property within the corporate limits is for the purpose of collecting taxes from the property owners. This court has held time and again that, if the real purpose of

the city in seeking to hold the territory within the corporate limits is to derive income therefrom by way of taxation, then the land should be relieved of this burden.

In view of this, I would reverse the case.

I am authorized to state that Mr. Justice ANDERSON joins in this dissent.