MADALENE E. WARD et al., Appellees, v. INCORPORATED TOWN OF CLOVER HILLS, Appellant.

No. 47436.

(Reported in 38 N. W. 2d 109)

JUNE 14, 1949.

Lappen & Carlson and William H. Fulton, all of Des Moines, for appellant.

902

Fountain, Bridges, Lundy & Stephenson, of Des Moines, for appellees.

GARFIELD, J.—Plaintiffs, thirty-one resident owners of lots in Penrod Place, brought this suit in equity under section 362.32, Code, 1946, asking that it be severed from defendant, Incorporated Town of Clover Hills, a suburb of Des Moines. Defendant-town, organized in 1906, with a population in 1940 of 326, occupies the north half, except the southeast quarter of the northeast quarter, of a certain section 10 in Polk county. However the northwest quarter section has not been platted into lots.

Penrod Place, including streets, is 325 feet wide east and west, a quarter mile long north and south and occupies the east 325 feet (about the east 10 acres) of the southwest quarter of the northeast quarter of the section. West Des Moines, formerly Valley Junction (1940 population 4252), adjoins Penrod Place on the east and south.

There are forty-two lots in Penrod Place, twenty-one on each side of Twelfth Street which extends north and south through the center of the plat. The two south lots, 21 and 22, are 71.5 feet wide north and south. The remaining lots are 60 feet wide north and south. All lots are 137.5 feet deep east and west. Vine Street runs east and west along the south side of Lots 21 and 22 and Prospect Avenue east and west along the north side of Lots 1 and 42. There is no north-and-south street along either the east or west side of Penrod Place.

Plaintiffs are all the resident owners of lots in Penrod Place. Five of the forty-two lots are owned by nonresidents. Plaintiffs filed their petition in October 1947. Trial in May 1948 resulted in a decree severing Penrod Place from defendant-town. Upon this appeal defendant makes two main contentions: First, that the district court was without jurisdiction to hear this cause and, second, the evidence fails to justify severance.

I. Claimed factual basis for the first of these contentions is that in February 1948, twenty-three plaintiffs were among one hundred one voters who petitioned the district court under Code section 362.11 for discontinuance of defendant municipal corporation; such question of discontinuance was then submitted

to the voters of Clover Hills at the regular municipal election on March 29, 1948, and the proposal lost by a vote of 107 to 103; on April 17, 1948, the district court dismissed the discontinuance proceeding.

It is argued the twenty-three plaintiffs who signed the petition for discontinuance thereby elected to pursue that remedy and abandoned this action for severance, thus reducing the number of plaintiffs herein to less than a majority of the resident property owners in Penrod Place and depriving the court of jurisdiction in this severance action.

There was no pleaded issue based on the discontinuance proceeding until fifteen days after the trial when defendant filed an amendment to answer which purports to conform to the proof. Upon the trial the petition and other papers in the discontinuance proceeding were offered in evidence by defendant over plaintiffs' objection. There is no testimony that more than three plaintiffs herein signed the petition for discontinuance unless the mere identity of names be deemed sufficient.

Even the belated amendment to answer does not allege the trial court was without jurisdiction herein although it does charge that those who signed the petition for discontinuance thereby abandoned this severance action and reduced the number of petitioners herein to less than the majority of resident property owners of Penrod Place which is required by Code section 362.32.

Assuming, without deciding, defendant is entitled to have the first of its contentions considered by us and that twenty-three plaintiffs signed the petition for discontinuance of defendant corporation, we are convinced the contention is without merit.

This action for severance pursuant to Code section 362.32 is in the nature of a special proceeding to which the usual technical formalities of ordinary trials do not strictly apply. Lorimor v. Incorporated Town of Lorimor, 196 Iowa 774, 779, 780, 195 N. W. 199; Wilson v. City of Waterloo, 138 Iowa 628, 630, 116 N. W. 734; Luick v. Incorporated Town of Belmond, 109 Iowa 361, 363, 80 N. W. 431.

In the cited cases trial was to the court "or either party may demand a jury." Section 624, Code, 1897. Under the present

section 362.32 the action is heard in equity. See McKeon v. City of Council Bluffs, 206 Iowa 556, 557, 221 N. W. 351, 352, 62 A. L. R. 1006, 1008. However we see no reason to depart from our decisions that technical formalities do not strictly apply.

A proceeding for discontinuance of a municipal corporation under sections 362.11 et seq. is not a court action at all in the accepted sense. It is true the petition for discontinuance by twenty-five per cent of the voters at the last municipal election is "to the district court." The court "shall" then cause notice to be given that the question of discontinuance will be submitted to the voters at the next regular municipal election. Returns of the election are made to the court and if it finds a majority of votes are for discontinuance "then a judgment shall be entered discontinuing the" corporation. Section 362.12. Our statutes do not state what the court shall do if the vote is against discontinuance as it was here but it would seem proper in such event for the court to dismiss the petition as was done here.

It is apparent a petition for discontinuance of a municipal corporation is the method provided by statute for getting that question submitted to the voters. The district court has to decide only whether the petition is signed by the required number of voters and, if so, whether a majority voted in favor of discontinuance. If there is an affirmative finding on either matter the statute provides what the court shall do.

Incidentally, it appears here that eighty-four persons voted in the last municipal election in Clover Hills preceding the filing of the petition for discontinuance. Only twenty-one signers to that petition were therefore required. However, there were seventy-eight signers thereto aside from those it is claimed were plaintiffs in the instant suit.

Little consideration need be given the question of election of remedies since the gist of defendant's contention is that signing the petition for discontinuance worked an abandonment of the present suit by the signers that deprived the court of jurisdiction herein. We may observe however the doctrine of election of remedies which defendant has argued ordinarily applies to the first decisive act of election and makes it a defense to the prosecution of a second inconsistent remedy. Where one has definitely

elected a remedy, the commencement of a subsequent action will not usually operate as an election of remedies so as to preclude prosecution of the prior action. If there is fatal inconsistency between two successive actions the one first invoked ordinarily prevails. See 28 C. J. S., Election of Remedies, section 19; In re Incorporation of Village of St. Francis v. City of Milwaukee, 208 Wis. 431, 243 N. W. 315; Zimmerman v. Robinson & Co., 128 Iowa 72, 74, 102 N. W. 814, 5 Ann. Cas. 960; Kearney Milling and Elevator Co. v. Union Pac. Ry. Co., 97 Iowa 719, 725, 66 N. W. 1059, 59 Am. St. Rep. 434.

 We are unwilling to hold that the mere signing of a petition asking that the question of discontinuance of defendant-municipality be submitted to the voters necessarily amounted to an abandonment of the present suit by those plaintiffs who signed such petition. The burden to prove its claim of abandonment rested on defendant. 1 C. J. S., Abandonment, section 7a; 1 Am. Jur., Abandonment, section 17. The cited authorities state proof of abandonment must be clear. There is no such proof here.

 Abandonment is the intentional relinquishment of a known right. It involves both intent and some act by which the intent is carried into effect. It is largely a question of fact, not of law. Ray Coal Mining Co. v. Ross, 169 Iowa 210, 217, 151 N. W. 63, 65; Kladivo v. Melberg, 210 Iowa 306, 307, 227 N. W. 833; Pitzenberger v. Schnack, 215 Iowa 466, 469, 470, 245 N. W. 713; Bennett v. Bowers, 238 Iowa 702, 706, 28 N. W. 2d 618, 620; 1 C. J. S., Abandonment, section 1; 1 Am. Jur., Abandonment, section 2. The act of relinquishment must be unequivocal and decisive (Kladivo v. Melberg, supra) and with knowledge of the facts. See Courtney v. Courtney, 149 Iowa 645, 648, 129 N. W. 52, and citation.

Nothing is shown here except the mere signatures to the petition for discontinuance which appears to have been circulated among the voters by different laymen. Several sheets attached to the petition contain nothing but signatures. We think this an insufficient showing of abandonment of the present suit.

 There is another answer to defendant's present claim of want of jurisdiction. Clearly the signing by any plaintiffs of

the petition for discontinuance could have no greater effect upon the instant suit than their voluntary withdrawal therefrom. We are committed to the rule that where such a petition as that in this severance suit is signed and filed by the requisite number of persons and jurisdiction of the proceeding is once acquired, subsequent withdrawals from the petition do not result in a lack of jurisdiction. It is conceded the petition in this suit was signed by more than the requisite number of property owners and that the court acquired jurisdiction.

In Seibert v. Lovell, 92 Iowa 507, 511, 61 N. W. 197, there were many withdrawals from a petition for the establishment of a drainage district which contained the required number of signers when filed. We held the question of jurisdiction was to be determined from the petition as it was when filed and that subsequent withdrawals therefrom did not deprive the board of jurisdiction previously acquired.

We have uniformly adhered to this rule in different proceedings where a petition is signed and filed by the required number of interested persons and there are subsequent withdrawals or attempted withdrawals therefrom. Dunham v. Fox, 100 Iowa 131, 136, 69 N. W. 436; Thede v. Thornburg, 207 Iowa 639, 643, 223 N. W. 386; Peverill v. Board of Supervisors, 208 Iowa 94, 116, 222 N. W. 535; Zilske v. Albers, 238 Iowa 1050, 1055, 29 N. W. 2d 189, 192.

We are satisfied the trial court's jurisdiction herein was not ousted by the claimed signing of the petition for discontinuance. See also in this connection In re Incorporation of Village of. St. Francis v. City of Milwaukee, supra, 208 Wis. 431, 243 N. W. 315.

■ II. On the merits we think the decree should be affirmed. Our statutes do not specify the grounds for severance of territory from a municipality. We have held, however, that severance should be denied where the territory is reasonably needed by the municipality (1) for sanitary purposes (2) for police or fire regulation or protection, or (3) in anticipation of its future growth. The wishes of the resident owners of the territory in question are a minor consideration.

A municipality may not retain territory, against the will

of its owners, not needed for city purposes and not benefited from being within the corporation, merely for the purpose of deriving revenue from it. However, property should not be severed from a municipality solely so its owners may escape municipal taxation if the territory is reasonably needed for public purposes. In such event the owners should bear their just proportion of the public burdens.

The above views find support in Creery v. Town of Okoboji, 217 Iowa 1312, 253 N. W. 810; Lorimor v. Incorporated Town of Lorimor, 196 Iowa 774, 195 N. W. 199; Platt P. & F. Brick Co. v. Incorporated Town of Van Meter, 170 Iowa 509, 153 N. W. 178, and citations. See also McKeon v. City of Council Bluffs, 206 Iowa 556, 221 N. W. 351, 62 A. L. R. 1006, and annotation 1011, 1037, ff.

 It fairly appears the retention of Penrod Place is not reasonably necessary to defendant for sanitary purposes, police or fire protection, anticipated future growth or other municipal purpose. Penrod Place has received little if any benefit from its inclusion in the town. It is the wish of all resident owners of the territory to withdraw.

There is no sewage system in the town except such as individual property owners provide for themselves in the way of septic tanks or cesspools, many of which do not function properly. After some agitation for severance of territory defendant engaged an engineer in June 1946, who designed a sanitary district of about 500 acres. Territory in the town embraced about two fifths of the proposed district. The proposal to establish the district was submitted to the voters on April 9, 1948, and lost by a vote of 133 to 94. There are numerous outside toilets in town—nine in Penrod Place. There is no garbage service except that from West Des Moines.

Except for individual wells, water is obtained from West Des Moines. A one-inch water pipe serves about fifteen families in Penrod Place, including the operator of a dairy. This inadequate supply results in unsanitary and unhealthful conditions and constitutes a fire hazard. One building in Penrod Place was destroyed by fire in 1941 or 1942 when there was insufficient available water to put out the fire.

. Defendant provides no police protection in the town and apparently never has. What protection is furnished comes from the Polk county sheriff's office several miles distant. The only fire protection is provided by arrangement with the West Des Moines fire department. There are five fire hydrants in defendant-town along a larger water main (4 and 6 inches) from West Des Moines that serves other parts of Clover Hills. None of the hydrants is close enough to Penrod Place for effective use in case of fire there. .

There is no fair prospect that Penrod Place will be needed for future growth of the town. Most of the lots in question are already improved. There is a strip of nearly ten acres directly west of Penrod Place that is largely vacant and a like area just north of such vacant strip which also appears to be mostly vacant. There is a ravine down through the vacant strip first mentioned. North of Penrod Place is a triangular area of less than a half block and north of that is primary highway 90 which extends northeast and southwest. The ravine and highway serve as partial barriers between Penrod Place and the rest of Clover Hills.

. Defendant has shown little tendency to expand or grow. Originally the town consisted of more than 2000 acres. We understand its area is now reduced to 280 acres, including the northwest quarter section which, as stated, has not been platted. The east half of this quarter section appears to be agricultural land. Population of the town was 469 in 1920, 288 in 1930 and, as stated, 326 in 1940. There is evidence the drop in population between 1920 and 1930 was mainly due to severance of territory from the town and its annexation to what is now West Des Moines. We do not find the exact location of such territory shown by the record.

Severance of Penrod Place will not leave the boundaries of the town more irregular than they now are. As indicated, it will take from defendant the east ten acres of the southwest quarter of the northeast quarter section.

This controversy is unlike most of our severance cases, many of which involve agricultural land, in that plaintiffs say they want to be annexed to West Des Moines that is platted and

apparently improved up to the east and south lines of Penrod Place. The case is somewhat like McKeon v. City of Council Bluffs, supra, 206 Iowa 556, 560, 221 N. W. 351, 353, 62 A. L. R. 1006, 1009, 1010, where the territory (to quote from the opinion), "From the standpoint of municipal needs and convenience and the welfare of the inhabitants, were it not for state lines * * * would belong to Omaha, and not to Council Bluffs. No benefit of importance is, derived from the municipal government of Council Bluffs * * *." We there held severance was properly decreed. The cited case supports our conclusion here.

Clover Hills has no public building such as a library, no park or playground. It has no church or school. Penrod Place is in the West Des Moines school district. Mail service to Clover Hills is by rural delivery from West Des Moines. Telephone service comes through the West Des Moines exchange. The only business establishments in Clover Hills are a combined gasoline station and grocery store, a dairy, an electric repair service, and a sign manufacturer. All except the dairy which, as stated, is in Penrod Place are on the primary highway. There is no business district. Plaintiffs do most of their shopping in West Des Moines or Des Moines.

Further reference to the evidence is unnecessary. We may give some weight to the trial court's decision. We think there is insufficient justification for the retention of Penrod Place in defendant-town either because of the present or future needs of the municipality or the benefits conferred by it upon the territory in question.—Affirmed.

All JUSTICES concur except MANTZ, J., not sitting.